## Kirkpatrick *against* Mathiot.

The title to a tract of unseated land purchased by the commissioners at a treasurer's sale, after the lapse of five years is absolute and unqualified; and a subsequent purchase of it by one of several tenants in common, who were the owners before the sale of it by the treasurer, will not enure to the benefit of his co-tenants in common.

ERROR to the Common Pleas of *Westmoreland* county.

David Kirkpatrick against Jacob D. Mathiot and Noah Mendall. This was an action of ejectment for the undivided fourth part of a tract of land: in which the parties stated the following facts, and considered them in the nature of a special verdict.

Previous to the 8th of January 1801, John Probst was the owner of a full equal and undivided fourth part (the whole in four equal parts to be divided) of a certain furnace, called the Westmoreland furnace and forge, and of several tracts of land connected with the same, amounting altogether to 2998 acres, more or less, which undivided fourth part the plaintiff claimed title to recover in this action. On the 8th of January 1801, John Probst executed a mortgage for the Westmoreland furnace property, including the lands in controversy, to John Kirkpatrick, to secure the payment of £1050. John Kirkpatrick sued out a *scire facias* upon the mortgage to March term 1807, of the Common Pleas of Westmoreland county, against the administrators of John Probst, deceased, the mortgagor, upon which judgment was rendered for the plaintiff, on the 26th of November 1820, for the sum of $5744, with costs of suit. Whereupon *levari facias*, No. 111, of February term 1821, was issued, in virtue of which the mortgaged premises were struck down to David Kirkpatrick, the plaintiff of record in this action, on the 19th of February 1821.

John Klingensmith, Esq. was sheriff of the county of Westmoreland at the time of the levy and sale, and the return was signed by him, having been commissioned on the 19th of November 1819. John Klingensmith was commissioned as sheriff of Westmoreland county, a second time, on the 28th of October 1828. On the 27th of August 1829, John Klingensmith, sheriff, in pursuance of the proceedings heretofore referred to, executed a deed to the purchaser, David Kirkpatrick, for the land in controversy, and acknowledged it in open court on the 13th of August 1830. No application for leave for the sheriff to execute the deed, nor any order of court relative thereto could be found on record, and no such order existed, unless it could be inferred from the fact of the

[Kirkpatrick v. Mathiot.]

acknowledgment, which was regularly entered on the minutes of the court on the day it purported to have been taken. The above statement formed the plaintiff's claim of title.

Some time previous to the 3d of January 1825, Alexander Johnson became vested with the title to one equal half part of one equal fourth part (the whole in four equal parts to be divided) of the Westmoreland furnace and forge, with the appurtenances, including the several tracts of land, supposed to embrace 2998 acres, more or less, being the same land of which the plaintiff claimed title to the undivided fourth part, for which this ejectment was brought; and on the 3d of January 1825, Alexander Johnson conveyed the same to James Cuddy. On the 26th of December 1825, James Cuddy sold to Jacob D. Mathiot and Noah Mendall, the defendants, all the interest he had in the property in controversy, in virtue of the deed from Alexander Johnson, together with the half of an undivided fourth part of the same property as held by James Cuddy, under an article of agreement entered into between himself and M'Clurg & M'Knight, bearing date the 15th of June 1825. Under this contract the defendants became entitled to an undivided fourth part (in four equal parts to be divided) of the property, for which this action was brought.

The tract of land in controversy was purchased by the commissioners of Westmoreland county at a treasurer's sale of unseated land, on the 25th of June 1822, for taxes assessed on the land as unseated, from the year 1808 up to the time of sale; and a deed was duly executed to them, pursuant to the Act of Assembly, by the county treasurer, on the 14th of February 1823. Five years having elapsed without the property having been redeemed by the owners, the commissioners of Westmoreland county proceeded to sell the same pursuant to the Acts of Assembly in such case made and provided; and on the 25th of November 1829, the property in controversy was struck down to Jacob D. Mathiot and Noah Mendall, the defendants, for the consideration of $30, and a deed duly executed and acknowledged by them to the purchasers. Before the commencement of this action, the plaintiff tendered to the defendants the proportion of the amount of the purchase money, the consideration of the commissioners' deed, which would be equivalent to the share to which he claimed title.

If, under this statement, the court should be of opinion that the plaintiff was entitled to recover, judgment was to be entered for him, with six cents damages and six cents costs; if otherwise, judgment to be entered for defendants.

The court below (White, President,) rendered a judgment for defendants.

*Findlay*, for plaintiff in error, contended that the right of redemption remained as long as the title remained in the commissioners; the whole object of the Act of Assembly, and system of

[Kirkpatrick v. Mathiot.]

taxation, was to insure the payment of the county rates and levies, and not to acquire title to land; if, therefore, the land was the subject of redemption, the purchase by one tenant in common was but a mode of redemption which enured to the benefit of his co-tenant.　5 *Johns. Chan.* 407; 3 *Sumn.* 376; 5 *Cow.* 520.

*Foster, contra,* argued that after the lapse of five years the title in the commissioners became absolute, and not subject to redemption.　10 *Watts* 354.　All privity and relation between the tenants in common was lost with the land; they became strangers to each other in relation to it; and owed to each other, therefore, no fidelity respecting it, but each was at liberty to acquire title to it for himself; which could only be acquired by purchase.

The opinion of the Court was delivered by

HUSTON, J.—The decision of this case will depend on the construction of the following sections of the Act of 13th of March 1815, and on the relations and duties of tenants in common to each other.　The fifth section of the Act provides that if a sum shall not be bid for a tract of land offered at treasurer's sale, sufficient to cover the taxes and costs accrued at that time, " it shall be the duty of the commissioners of the proper county, or any of them, to bid off the same, and a deed shall thereupon be made by the treasurer to the commissioners for the time being, and to their successors in office, to and for the use of the proper county; and it shall be the duty of the commissioners to provide a book, wherein shall be entered the name of the person as whose estate the same shall have been sold, the quantity of land, and the amount of taxes it was sold for; and every such tract shall not thereafter, so long as the same shall remain the property of the county, be charged in the duplicate of the proper collector; but for five years next following such sale, if it shall so long be unredeemed, the commissioners shall, in separate columns in the same book, charge every such tract of land with the reasonable county and road tax, according to the quality of said land, not exceeding in any case the sum of $6 for every hundred acres."　By a subsequent Act of 13th of March 1817, it was left discretionary with the commissioners whether they would purchase.

"Sect. VI. The right of redemption shall remain in the real owner for five years after such sale, on paying the treasurer of the county all the taxes and costs due thereon at the time of the sale, and interest therefor; and also the taxes assessed and interest thereon from the time it ought to have been paid, and on the production of the treasurer's receipt the commissioners shall, by deed poll endorsed on the back of the deed of the treasurer to them, convey to the person who shall have been the owner of the land at the time of the sale, or to his legal representatives, all the

IV. — W.

[Kirkpatrick v. Mathiot.]

right and title which the county may have acquired under such sale as aforesaid :" the road tax to be paid to the supervisors of the proper township.

"Sect. VII. If the owner of such land shall not redeem the same within the period aforesaid, it shall thereafter be lawful for the commissioners to sell any such land by public sale, and make a deed therefor to the purchaser, which shall be available in law against the county as well as against the person or persons as whose estate the same had been sold ; but no tract shall be sold for a sum less than the amount of taxes, cost and interest which shall be due at the time of such sale by the commissioners," &c. And by Act of 20th of March 1824, section second, it is enacted, that such deed made by the commissioners shall vest a good and valid title in fee-simple in the purchaser. And by the first section it is enacted, that the commissioners may sell lands so purchased for the best price that can be obtained for them. There is nothing in any of these Acts which in any degree gives colour to the idea that after the five years have expired the former owner had any particle of interest in them, or in the proceeds of them.

Two cases decided in this court seem to settle all matters necessary to decide this cause. *Huston* v. *Foster*, (1 *Watts* 477). The offer of the former owner to redeem after the five years had elapsed, did not avail him anything; and secondly, the sale by the commissioners after the five years was a sale by owners, and the purchaser was not bound to show anything but his deed. The other case is *Lewis* v. *Robinson*, (10 *Watts* 354). Land held by two joint tenants was sold for taxes; after the time for redemption had gone by, one of those who had been a tenant in common bought from the purchaser at sale for taxes. This court held that although if one tenant in common had redeemed the land within two years it might have enured to the use of the other; yet after the time for redemption had elapsed, and the title was valid in the purchaser, the relation of tenants in common ceased, and either might purchase and hold for himself. These decisions, or the last of them, were not published when this writ of error was taken.

Judgment affirmed.