## SWIFT and another vs. AGNES and another.

EXECUTION: (1–6) *In action commenced by attachment.* (2) *Alternative forms. Creditor's option.* (3) *Effect of each form.* (4) *Form of execution construed.* (5) *Effect of erroneous recital.* (6) *The remitter of part of plaintiffs' rights.* (7, 8) *What interest in land may be sold on execution.* (9–11) *Rights of execution defendant remaining in possession after sale. Attornment to third person.* (14) *Liability for mesne profits.*

TAX DEED. (11) *When limitation runs against tax title.* (12) *When original owner cannot set up outstanding tax title as a defense in ejectment.* (13) *Whether wife can take tax deed of husband's land.*

PRACTICE — APPELLATE COURT. (15) *Effect of the finding of the court below.* (16, 17) *Reversal of judgment in action tried by the court: What order made by this court.*

1. Sec. 8, ch. 134, R. S., and secs. 54 and 59, ch. 130, R. S., are *in pari materia*, and must be construed together.

2. Under these statutes it is optional with the judgment creditor, when property of the debtor has been *attached* in the action, to issue a *special or limited execution*, merely directing the attached property to be sold, or to issue an execution in the common form, with the addition of a special direction for the sale of the attached property.

3. Under either of the two forms of execution above described, the property attached will be the primary fund for the payment of the judgment; but under the second (and not under the first), if such property is not sufficient for the purpose, *other* property of the debtor may be levied upon.

4. In an action commenced by personal service of the summons, land of the defendant was attached, and after judgment against defendant, an execution was issued commanding the sheriff to satisfy the judgment

Swift and another vs. Agnes and another.

out of the real property in his county belonging to defendant on or after the day such judgment was docketed, and there was added a direction to levy said execution on the land attached. The return to the attachment and execution both show that the debtors had no other real property in the county liable to seizure. *Held*, that the mandate of the execution was in substance and effect merely that the sheriff should levy upon and sell all the interest which the judgment debtor had at the time named, in the real estate *attached*; and the writ was *valid*.

5. A mistake of one day in the recital in said execution of the date of docketing of the judgment, *held* an immaterial error, and one which might be cured if necessary by amendment.

6. The direction in said writ to sell the interest which the debtor had in such land *at or after the docketing of the judgment*, when the plaintiff was entitled to a sale of all said debtor's interest existing at and after *the date of the attachment*, did not invalidate the writ; but operated merely as a *remitter* of part of plaintiff's rights, if the debtor had parted with any interest in the land between the two periods named.

[7. *Possession* is one degree of *title*, though the lowest, and is such an interest in land that one who has the bare possession may maintain ejectment against a mere wrongdoer who intrudes into the possession. LYON, J., *arguendo*.]

8. Though a valid tax deed conveys the title in fee simple, yet the former owner, being still in possession after such a deed is issued and recorded, has such an interest in the land as may be *sold on execution*.

9. After a valid execution sale of land, the execution defendant, continuing in possession, holds *under the purchaser* at such sale, and not adversely to him.

10. The character of such occupancy cannot be changed by an *attornment* of the execution defendant to some person other than the execution purchaser, *without notice* to the latter.

11. Where the execution defendant continues thus in possession without doing anything to change the character of his occupancy, until more than *three years* have elapsed from the recording of a tax deed to a third person, the title of the tax title claimant is defeated under the statute of limitations, and a *subsequent* attornment of the occupant to such tax title claimant (even with notice to the execution purchaser) will be inoperative to save such title.

12. Where a person owning land and bound to pay the taxes thereon, permits them to be sold and deeded for such taxes, and then purchases the tax title, and causes it to be conveyed to a third person for his benefit, he cannot set up such title as a defense in ejectment against one who has purchased at a sale on execution against him since the execution of the tax deed.

13. Whether a wife (especially one without a separate estate) can take a tax deed of her husband's land, and hold the land adversely to him, is not here decided.

14. Purchaser at execution sale recovering in ejectment against the execution debtor, is entitled to *mesne profits* only from the execution of the sheriff's deed to him, and not from the sale.

15. Under ch. 264, Laws of 1860, in actions, whether legal or equitable, tried by the court *without a jury*, this court is required to review *questions of fact* as well as of law, where proper exceptions have been taken to the findings of fact, and the bill of exceptions purports to contain all the evidence. *Sanford v. McCreedy*, 28 Wis., 103, and cases there cited. In such a case, therefore, the *finding* of the court does *not* have the effect of a *verdict*.

16. Where the judgment in an action tried by the court without a jury, is reversed, this court, in its discretion, directs the proper judgment to be entered, or orders a new trial, as justice may require.

17. Where no evidence offered by the appellant was improperly rejected, and this court has all the controlling facts before it, and there is no reason to believe that the facts will appear differently on another trial, this court, on reversing the judgment of the court below, will not order a retrial.

APPEAL from the County Court of *Milwaukee* County.

Ejectment, for a tract of land in the county of Milwaukee containing about twenty-nine acres. The action was tried by the court without a jury, and resulted in a judgment dismissing the complaint with costs. The plaintiffs appeal. The pleadings, proofs and findings of the court disclose the following facts: The defendants are, and for many years have been, husband and wife. The defendant *Every Agnes* was the owner and in actual possession of the land in controversy prior to the year 1850, and has continued to occupy the same, either in person or by his tenants, until the present time.

The plaintiffs claim title to such land by virtue of a conveyance thereof executed to them by the sheriff of Milwaukee county, under the following circumstances: On the 19th day of March, 1859, the plaintiff *Richard K. Swift* and one John B. King (since deceased, and the intestate of the plaintiff *Emily A. King*) sued out a writ of attachment from the circuit court

for Milwaukee county, against the defendant *Every Agnes*, by virtue whereof the sheriff, on the same day, seized and attached a parcel of land, of which the land in controversy is a part, and the right, title and interest of said *Agnes* in and to the same. The sheriff's return to the writ of attachment shows that the same was personally served on *Agnes*, that all of the proceedings thereon were regular, and that he could find no other property of *Agnes* liable to seizure by virtue thereof. The action in which this writ of attachment was issued, was commenced by personal service of process on the defendant named therein, and such proceedings were had in that action that on the 28th day of November, 1859, the plaintiffs therein recovered judgment against said *Every Agnes* for $1,304.75, which judgment was duly docketed on the next day. On the 2d day of December, 1859, execution was issued on such judgment, and it is recited therein that the judgment was docketed November 28, 1859. The mandate of the execution is as follows: "Therefore we command you that you satisfy the said judgment out of the real property in your county belonging to the said defendant on the day when the said judgment was so docketed in your county, or at any time thereafter, in whose hands soever the same may be, and return this execution, within sixty days after its receipt by you, to the clerk of the circuit court, county of Milwaukee. You are required to levy said execution on the south half of the southwest fractional quarter of section 20, town 8, range 22, in said county." The land in controversy is part and parcel of the tract described in the execution, and was sold thereon by the sheriff (after due notice of the sale had been given), on the 10th day of March, 1860, to the plaintiffs in the execution, for the sum of $1,200. The usual certificate of such sale was executed by the sheriff to the purchasers, and the same was filed in the office of the register of deeds of said county, March 17, 1860. The execution was returned by the sheriff unsatisfied in part, and the return shows that the officer was unable to find any property

of *Every Agnes* liable to seizure and sale on execution out of which to make such balance.   The sheriff's deed under which the plaintiffs claim title, was executed pursuant to such certificate of sale, February 26, 1872, and was recorded March 21st in the same year.   It is understood that the premises described in the execution are the same premises which were seized by virtue of the writ of attachment.

The defendants claim in their answers, that the title to the twenty-nine acres in question is in the defendant *Mrs. Agnes;* and to sustain such claim they proved the following facts: The land was sold for the taxes assessed thereon in 1854, that is, the whole tract described in the execution was thus sold, and was duly conveyed by the proper officer to one Pixley, who was the assignee and owner of the certificate of sale, by a deed in due form executed and recorded April 12, 1858.   By a quitclaim deed executed and recorded on the 19th day of February, 1861, Pixley conveyed the land described in his tax deed to one Hanrahan, for the consideration of sixty dollars.   On the 25th day of the last mentioned month, Hanrahan executed to the defendant *Every Agnes* a written lease of the same premises, the *habendum* clause of which is as follows : " To hold for the term of ten years from the first day of May, A. D. 1861, the said lessee yielding and paying therefor the annual rent of one hundred dollars, to be paid in even and equal portions on the first days of November and May."   For a nominal consideration, Hanrahan executed to the defendant *Mrs. Agnes* a quitclaim deed of the same premises, dated May 6, 1867.   Neither the lease to *Every Agnes* nor the deed to *Mrs. Agnes* was recorded, and it does not appear that the plaintiffs had any knowledge of the existence of either before this action was commenced, or that John B. King ever had such knowledge.

On the trial, the defendant *Every Agnes* testified that he negotiated with Pixley for the purchase of the land, and paid about sixty dollars therefor ; and that he did so by the request

of Hanrahan, who funished him the money, and hence he took the deed from Pixley in the name of Hanrahan. He also swears that he paid rent from the time the lease commenced, but does not state the amount so paid. Hanrahan is dead. He was a relative of the defendants by marriage.

The proofs show that the land was assessed to *Every Agnes* in 1854; that he deposited the deed to Hanrahan for record, and after it was recorded took it from the register's office; that he occupied the land, and leased portions of it to others; that he constantly treated the land as his own; that as late as 1869, it was assessed to him, and was sold to the county in 1870 for nonpayment of the taxes of the preceding year; that he purchased from the county the certificate of such sale, duly assigned; that on the 8th day of May, 1872, he stated to the attorney of the plaintiffs, who had an interview with him on the subject, that he held possession of the premises for the purchasers at the execution sale, who are the plaintiffs, and that he had paid the taxes on the place for them for many years.

The taxes assessed in 1854 on the whole tract conveyed by the tax deed (supposed to be between sixty and seventy acres) were $11.36.

*Palmer, Hooker & Pitkin*, for respondents:

1. The sheriff's sale was void. The execution was fatally defective. It is merely a written direction to the sheriff to satisfy the judgment out of the defendant's real estate, and to levy on the property attached. He is not required to sell the debtor's *personal property*, in compliance with sec. 8, ch. 134, R. S., nor is he directed to sell the *interest which the defendant had* in the real estate *at the time it was attached*, in compliance with sec. 59, ch. 131, R. S. The right to sell real estate by execution is given only by statute; and the validity of the sale depends on a strict compliance with the statute. *Mitchell v. Kirkland*, 7 Conn., 229; *Metcalf v. Gillet*, 5 id., 400. The language of Justice COLE in *Vilas v. Reynolds*, 6 Wis., 214, justifies the infer-

ence that the sale in this case was void, the officer here not hav-ing been commanded or authorized to satisfy the judgment out of the debtor's property, and the title not having passed into the hands of innocent purchasers.    2. The proofs establish the title of the defendant  Alice Agnes.   The tax deed to Pixley was issued prior to the attachment, and its validity is not ques-tioned.   The judgment debtor, therefore, had no estate in the land which could be affected by the attachment, judgment or sale.    The proofs also establish a possessory title in defendants.

J. F. McMullen, for appellant, contended that the execution offered in evidence was the proper one to be issued upon the judgment, where specific real estate had been attached, and held until the judgment was obtained.    2 Tay. Stats., ch. 130, §§ 57, 62.    Similar is the execution against property to which a mechanic's lien has attached.    2 Tay. Stats., ch. 153, § 16 ; Bailey v. Hull, 11 Wis., 289, 292 ; Noss v. Cord, 1 id., 389, 392, 393.    The facts that the execution directed the officer to levy on the real estate attached, and that the sheriff, in his re-turn, recites that he sold all the right, title and interest which defendant had in the land on the 28th of November, 1859 (the day the judgment was rendered, and the day before it was docketed), do not invalidate the sale. · Such differences in phraseology are not material, where it does not appear that any one is prejudiced thereby.    Vilas v. Regnolds, 6 Wis., 214. The sale is not in any case void because the writ did not re-quire the officer to first seize personal property, where it appears in evidence uncontradicted that the debtor had no personal property at the time, upon which such levy could be made. Bunker v. Rand, 19 Wis., 253 ; Bennett v. Child, id., 362.; Harteaux v. Eastman, 6 id., 410 ; Mariner v. Coon, 16 id., 465 ; Holmes v. McIndoe, 20 id., 657 ;  Isham v. Downer, 8 Conn., 282. The erroneous recital that the judgment was docketed on the 29th of November, was amendable at any time.    Morrison v. Aus-tin, 14 Wis., 601 ; Sabin v. Austin, 19 id., 421.  2. Title to the land was not shown in Alice Agnes, or any other third person.

Until the period of redemption from the execution sale expired, the fee was in *Every Agnes.* 2 Tay. Stats., ch. 134, § 80 ; *Dean v. Pyncheon*, 3 Chand., 9. The owner of real estate who is in possession when the tax is assessed, and against whom it is assessed, is bound to pay the tax, and, if the land is so sold for nonpayment, can take nothing by the tax deed, or by a deed from the grantee therein named. *Bassett v. Welch*, 22 Wis., 175. Can he, *by his act*, confer even a claim of title on another through such a tax deed, and cut off the purchasers at the execution sale ? Did not the whole proceeding on the part of *Every Agnes* amount simply to a payment of his tax ? Again, while the fee was still in him, he could not attorn to another person, so as to give the latter possession adverse to that of the purchasers at the execution sale. He could not set any statute of limitations running in his own favor, or in favor of any one else, as against them ; because their right of action to recover possession did not accrue until the time for redemption had expired. And since *Every Agnes*, whose title was in privity with that of the purchasers, was in possession for three years after the tax deed was recorded, that deed ceased to be a muniment of title against him or such purchasers. The evidence shows that he did not commence holding under the lease from Hanrahan until after the three years had expired. 3. To set the statute of limitations running in favor of a party in possession, such possession must be adverse in its *inception.* Tyler on Ejectment, 860, and cases there cited ; *Rigg v. Cook*, 4 Gilm., 336 ; *Turney v. Chamberlain*, 15 Ill., 271 ; *McClellan v. Kellogg*, 17 id., 498 ; *Jackson v. Berner*, 48 id., 203. The judgment debtor is *quasi* a tenant at will, so far as the nature of his occupancy is concerned in its relation to the purchasers at the execution sale. Tyler on Ejectment, 920 ; *Cook v. Travis*, 20 N. Y., 400 ; *Jackson v. Sternbergh*, 1 Johns. Cas., 153. In order to set the statute of limitations running in his own favor or that of any other person, such *quasi* tenant must *disclaim* to hold under the former title, and *notify* the person against whom he

disclaims. *Agnes* could not set the statute running against us by any act of his, until our right to the possession accrued; and after that he could do so only by a disclaimer and notice to us. 3 Washb. R. P., 127–129; 1 id., 494–5; *Avery v. Judd*, 21 Wis., 265; *Quinn v. Quinn*, 27 id., 168; *Gilman v. Riopelle*, 18 Mich., 145. See also *McMahon v. McGraw*, 26 Wis., 614. 4. *Alice Agnes* has an inchoate right of dower in this land, which was not cut off by the sale on execution. She derives her title from the same source as her husband, and the purchasers at the sale. This tax deed covered her dower interest, as well as the fee. *Madigan v. Walsh*, 22 Wis., 501. She has power to redeem, or to bring suit to clear her interest of any cloud attempted to be fastened on it by a tax deed. She stands in such a relation to her husband's title, that she cannot cut off either his title or ours by a tax deed; for to cut off our title, she must equally cut off his.

LYON, J. I. The plaintiffs make their title to the land in controversy through the sale thereof by virtue of the execution, and unless that be a valid execution, the sale and conveyance under and by virtue of it are necessarily void, and the plaintiffs have no title to the land. It is claimed on behalf of the defendants that such execution is irregular, defective and void, because: 1. It does not state correctly the day on which the judgment was docketed; 2. It does not command the officer to satisfy the judgment out of the personal property of the debtor, before resorting to his real estate; 3. It does not in terms direct a sale of the real estate attached, but only that it be levied upon; and 4. It does not direct a sale of the interest in the land which the judgment debtor had at the time it was attached, but only directs generally that the judgment be satisfied out of the debtor's real property belonging to him on the day the same was docketed.

The general and ordinary requisites of an execution are prescribed by statute. R. S., ch. 134, sec. 8. It must state, among

other things, " the time of docketing " in the county to which it is issued. Subdivision 1 of that section provides as follows: " If it be against the property of the judgment debtor, it shall require the officer to satisfy the judgment out of the personal property of such debtor, and, if sufficient personal property can not be found, out of the real property belonging to him on the day when the judgment was docketed in the county, or at any time thereafter." (Tay. Stats., 1546, § 8.) But there are other statutes which prescribe the practice in cases where, as in this case, the property of the judgment debtor has been attached before judgment. Sec. 54, ch. 130, R. S., provides that in case judgment be entered for the plaintiff in the attachment suit, the sheriff shall satisfy the same out of the property attached by him, 1. By paying over to the plaintiff proceeds of sales of perishable property, and of real estate received from any garnishee, and proceeds of debts or credits collected by the sheriff; and 2. By selling so much of the attached property, real or personal, on the execution issued on such judgment, as shall be sufficient to satisfy the same. Sec. 59 of the same chapter is as follows: " When real estate has been attached in pursuance of the provisions of this chapter, and judgment shall be rendered for the plaintiff, the execution may, among other things, direct a sale of all the interest which the defendant had in such real estate at the time it was so attached." (Tay. Stats., 1481, 1483, §§ 57, 62.)

Construing these statutes together (and certainly they are *in pari materia* and should be so construed), we are of the opinion that it is optional with the judgment creditor, in an action wherein the property of his debtor has been attached, to issue a special or limited execution, merely directing that the attached property be sold, or to issue an execution in the ordinary form, with the addition thereto of a special direction for the sale of the attached property. In either case the recitals contained in the execution will be the same, and in either case the property attached will be the primary fund for the payment of the judg-

ment.   The only difference in the two forms of execution is, that if it be special, none but the attached property can be sold under it; but if the other form be adopted, the execution may be levied upon property not attached, if that attached be insufficient to pay the judgment.

In the present case, the theory upon which the execution was framed is not very apparent, and perhaps it is not very material to know what that theory was.    We are to look at the substance rather than the form, and the true inquiry seems to be,   What is the scope and extent of the mandate contained in the execution ?   When the writ of attachment was executed, and also when the execution was served, the judgment debtor had no other real estate in Milwaukee county liable to be seized on either process.   This appears by the returns of the sheriff to those writs.   Hence, notwithstanding the general language of the mandate, in view of the facts, it is nothing more, in substance and effect, than a direction to the sheriff to levy upon and sell all of the interest which the judgment debtor had, on the 28th of November, 1859, or any time thereafter, in the real estate therein described, and which was seized by virtue of the writ of attachment.

The mistake in the execution of one day in the date of docketing the judgment, cannot possibly prejudice the judgment debtor.   It is a trifling and immaterial error, which, if necessary, may be cured by amendment.   The object of the recital is to show the time when the judgment became a lien upon real estate, and the lien in this case was fixed by the attachment long before November 28, 1859.

The execution might properly have directed a sale of the interest which the judgment debtor had in the land in controversy when it was attached, to wit, on the 19th day of February, 1859, or any time afterwards.    But we do not think that the execution is void because it directs a sale of the interest which he had therein on the day that the judgment was rendered, or any time after that day.   If this is an error, it is one

which is, or may be, against the judgment creditors, and cannot possibly work any injury to the debtor. It is equivalent to a remitter, by such creditors, of their lien on the land attached, from February 19th to November 28th; and it is not perceived wherein it differs in principle from a case where a plaintiff voluntarily remits a part of his judgment and issues execution for the balance thereof. It will not be claimed that an execution issued on a valid judgment for $1,000, but which only directs the sheriff to collect $500, is not a valid execution for the latter sum.

The only objections taken to the validity of the plaintiffs' title relate to the alleged defects in the form of the execution, and it is believed that the views above expressed dispose of all those objections.

The cases in Connecticut, cited by the learned counsel for the defendants to show the invalidity of the execution, do not relate to the form of the writ. They simply hold that where certain statutory provisions concerning the appraisal of real estate seized on execution have not been complied with, the writ is invalid, and no title can be established under it. *Metcalf v. Gillet*, 5 Conn., 400; *Mitchell v. Kirkland*, 7 id., 229. The inapplicability of these cases to the present one is apparent.

After most careful consideration, our conclusions upon this branch of the case are, that the execution under and through which the plaintiffs claim title, is a valid one, and that they have a good title to the land in controversy, unless the same is defeated by the tax deed to Pixley and the subsequent conveyances under it.

II. We now come to consider the effect of the tax deed to Pixley, and the subsequent conveyances, upon the title of the plaintiffs. The validity of this tax deed is unquestioned, and it must be conceded that it conveyed to Pixley an absolute estate in fee simple in the land in controversy. R. S. 1849, ch. 15, sec. 109. It is claimed that the defendant *Every Agnes* had no interest in the land which could be seized on attach-

ment or sold on execution. We think otherwise. Possession is one degree of title, although the lowest. It is such an interest in land that one who has only the bare possession may maintain ejectment against a mere wrong-doer who has intruded into the possession, notwithstanding the statute (R. S., ch. 141, sec. 2) provides that no person can recover in such an action unless he have a valid subsisting interest in the premises claimed. *Bates v. Campbell*, 25 Wis., 613. The possession of the judgment debtor which he had when the judgment was obtained and at the time of the execution sale, was a "valid and subsisting interest" in the land, an interest which might lawfully be sold on execution. *Bunker v. Rand*, 19 Wis., 253.

III. But it is further claimed that by reason of the alleged attornment by the defendant *Every Agnes* to Hanrahan, the possession of the former became adverse to the purchasers at the execution sale, and subservient to the tax title, and that therefore two distinct statutes of limitation have run against the title claimed by the plaintiffs: the limitation of three years prescribed by the Laws of 1861, ch. 138, sec. 5 (Tay. Stats., 441, § 173), and the ten years limitation prescribed by the R. S., ch. 138, sec. 6 (Tay. Stats., 1622, § 6).

This proposition requires but little discussion. The attornment referred to was effected by the acceptance by *Agnes* of a lease from Hanrahan of the premises in question. That lease, by its terms, did not commence to run until May 1, 1861, and until that time the premises were held adversely to the tax deed. The latter deed was recorded April 12, 1858. The premises were therefore held adversely to the tax title more than three years after the same was recorded. There being no pretense that the grantee in the tax deed, or his assigns, is or are within the exceptions of the statute, such adverse possession absolutely defeats the title conveyed by the tax deed. Laws of 1859, ch. 22, sec. 32 (Tay. Stats., 440, § 172). The statute has run against the tax deed, and in favor of the plaintiffs, who succeed to the interest of the original owner.

But were it true that such attornment was made before three years from the recording of the tax deed had elapsed, it would still be inoperative, and was, whenever made, inoperative to change the character of the occupancy, for the reason that the purchasers on the execution sale had no notice whatever of such attempted attornment.

From and after the execution sale, *Every Agnes* held possession of the premises under the purchasers thereof at such sale, and not adversely to them. This is well settled by the authorities cited on behalf of the plaintiffs. It is also well settled that "where one enters in subserviency to the title of the real owner, there must be a clear, positive and continued disclaimer and disavowal of the title under which he entered, and an assertion of an adverse right brought home to the owner, in order to lay a foundation for the operation of the statute of limitations." 3 Washburn on Real Property, 127 (ch. 2, § 7, subd. 23). Here we have no such disclaimer or assertion of an adverse right brought home to the plaintiffs, or the purchasers at the execution sale. There is no pretense that John B. King ever knew of this attornment to Hanrahan, or that either of the plaintiffs knew of it until after this action was commenced. Hence, no foundation has been laid for the operation of either of the above mentioned statutes of limitation, and they are not available to the defendants.

IV. The views already expressed are decisive of the case; but it is deemed proper to say that we have considered the question, and, were it necessary to decide it, we should have no difficulty in finding from the evidence that the defendant *Every Agnes* purchased the tax title of Pixley, paid for it, had the same conveyed to Hanrahan, and by the latter to *Mrs. Agnes*, for his own use and benefit, and that these proceedings are not in the way of a recovery in this action by the plaintiffs.

We refrain from determining whether a wife (especially one who has no separate estate) can take a tax deed of her husband's land, and hold such land adversely to the husband. If

she may lawfully do so, some singular complications growing out of such transactions may hereafter arise.

V. The plaintiffs are entitled to judgment for the recovery of the land, but can only recover mesne profits from the time of the execution of the sheriff's deed, that is, from February 26, 1872.

*By the Court.*—The judgment of the county court is reversed, and the cause remanded with directions to that court to render judgment for the plaintiffs in accordance with this opinion.

On a motion for a rehearing, the respondents' counsel con-tended, 1. That the defect in the execution was one of sub-stance, and not merely one of form; that it was the intention of the legislature, indicated by sec. 8, ch. 134, R. S., that the real estate of judgment debtors should not be sold on execution, until their personal property liable to execution should first be exhausted; that there was no intention to depart from this rule by the enactment (in 1856) of subd. 2, sec. 54, ch. 130, R. S.; but that this subdivision assumes that the usual execution upon the judgment is to be issued. Compare that section with sec. 63, ch. 112, R. S. 1849. A return that the judgment debtor had no other property out of which the execution could be made, indorsed upon a writ which did not authorize the officer to look for personal property, or even to take money in payment of the debt, cannot affect the question as to the validity of the writ. 2. That the possession of *Every Agnes*, at the time of the attachment, did not constitute such an interest in the land as would pass to the purchaser at the execution sale. Possession is *prima facie* evidence of title, and it may sustain a judgment in ejectment when the defendant shows no better evidence of title. At the date of the attachment and of the judgment, Pixley was the absolute owner of the property, and had the right of possession. He could have maintained ejectment against *Agnes*. The possession of *Agnes* therefore was unlawful. Can such unlawful possession be the

subject of sale on execution? Can the purchaser of it maintain ejectment, even as against a trespasser? If either of the defendants has acquired the title which Pixley had in fee simple, then the doctrine laid down in the opinion would go to this extent: that the purchaser of the naked possession (and, we say, unlawful possession) may maintain ejectment against one who is the owner of the fee, and who has also the right of possession. We hardly think the case of *Bunker v. Rand*, 19 Wis., 253, goes to that extent. 3. That as to the transactions between Pixley, Hanrahan and the defendants, unless plaintiffs stood in such relation to *Every Agnes* that such transactions were a fraud upon them, or unless *Every Agnes* was under obligation to buy in the title of Pixley for their benefit, then the title passed from Pixley to Hanrahan, as between *Every Agnes* and the plaintiffs. Counsel argued further, (1.) That plaintiffs were not in a position to question those transactions. They had no interest in the property when the tax accrued, nor when the tax deed was executed. They acquired by the execution sale no greater interest in the property than the judgment debtor had. But the absolute title had previously passed from him under the tax deed; and he had not even the right of redemption left. The relation between him and the plaintiffs was exactly the same as if he had conveyed the land to Pixley, by deed duly executed and recorded prior to the attachment. If such a conveyance had been made, was the relation of the parties such that the plaintiffs could question the honesty of a subsequent purchase from Pixley, with the money of *Every Agnes*, and in the name of Hanrahan? If, under this supposition, *Agnes* had purchased it back in his own name, could the plaintiffs find fault with the transaction? (2.) That *Every Agnes*, after the absolute title in fee simple had passed to Pixley and after plaintiffs had sold whatever interest (if any) *Agnes* had in the property, was not under any obligation to buy in the title of Pixley for the benefit of the plaintiffs. Could not *Agnes*, as against the plaintiffs, therefore, have taken the

deed from Pixley in his own name? "After a tax title has matured in the hands of a stranger, it is said that one tenant in common may purchase and hold adversely to his cotenant." Blackwell on T. T., 472; *Kirkpatrick v. Mathiot,* 4 W. & S., 251. Counsel further contended that there was no evidence upon which the findings of the court below as to these transactions should be disturbed, under the established practice of this court; but if otherwise, that then the evidence should be submitted to the jury upon a new trial.

The motion for a rehearing was denied.

LYON, J. We think that this case was correctly decided. After a careful consideration of the argument in support of the motion for a rehearing, our opinions are unchanged upon the following propositions: 1. That the execution, although informal in some respects, was valid, and that the plaintiffs have good title to the premises in controversy, unless the same is defeated by the tax deed to Pixley. 2. That the tax deed is barred by the statute of limitations, because the possession of *Agnes* was adverse to the holder of the tax title, and subservient to the purchasers at the sale by virtue of the execution, and so continued for more than three years after the tax deed was recorded; and 3d. That at the time of such sale *Agnes* had an interest in the land, which was the subject of sale on execution against him.

In addition to what is said in the former opinion upon the last proposition, it may be observed, that although the tax deed vested in Pixley an absolute estate in the land in fee simple, yet such estate was liable to be entirely defeated, and the whole title revested in *Agnes,* by the failure of Pixley to assert his title within three years after the tax deed was recorded. The interest of *Agnes* in the land was, therefore, something more than the mere naked possession thereof. It was an adverse possession, which, within a very limited time, might ripen into a perfect title thereto. That such an interest may be the subject of seizure and sale upon execution, we can not doubt.

There is no real conflict in the testimony which establishes the existence of the facts upon which the foregoing propositions are based; and if the propositions are correct (of which we entertain no reasonable doubt), they are conclusive of the case, and determine it against the defendants.

It is suggested in the argument on this motion, that the findings of fact by the court are equally as conclusive as the verdict of a jury, and cannot be disturbed on appeal where there is any testimony to sustain them. Such is not the law of this state. In *Snyder v. Wright*, 13 Wis., 689, it was held that under the provisions of ch. 264, Laws of 1860, this court is required to review questions of fact as well as of law, when the trial has been had before the court below without a jury, and proper exceptions have been taken to the findings of fact. And the rule there asserted has been constantly adhered to by this court, in all such cases, when the bill of exceptions (as it does in this case) purports to contain all of the testimony introduced on the trial. The rule is the same in legal and equitable actions. *Sanford v. McCreedy*, 28 Wis., 103 and cases cited. When the judgment in an action tried by the court without a jury is reversed, this court, in its discretion, directs the proper judgment to be entered or orders a retrial of the action, as justice may require. In this action we have all of the controlling facts before us, and there seems to be no good reason to believe that they would appear differently on another trial. Neither have the defendants been deprived of any testimony by adverse rulings of the court, which ought to have been received. In short, no good reason is perceived why there should be a retrial of the case.

For the sake of strict accuracy, and not because it is material to the decision of this motion, it should be stated that the former opinion attributes to the learned counsel for the defendants more objections to the validity of the execution than were made by them. The only point against the validity of that writ urged by them on the former argument, was, that it did

not command the officer to satisfy the judgment out of the personal property of the debtor before resorting to his real estate. *By the Court.*—Motion denied.