## Sharp v. Sharp

772

*Donald W. Van Artsdalen*, for plaintiff.
*William R. Cameron, Jr.*, for defendant.

SATTERTHWAITE, J., May 9, 1958.—In 1945 plaintiff and defendant, then husband and wife respectively, acquired title as tenants by the entireties to certain real estate in Nockamixon Township, this county, creating a mortgage thereon in favor of Lansdowne Federal Savings and Loan Association. In 1954 the parties were divorced. In 1957 the mortgagee entered judgment against both on the bond accompanying the mortgage and issued a writ of fi. fa. to collect the balance of the mortgage indebtedness. At the resulting execution sale, according to the complaint in the within proceedings, "the Sheriff sold the said premises . . . to Defendant [herein], Esther D. Sharp, for the sum of $228.83; being the amount of the sheriff's costs," and duly conveyed the same to her by sheriff's deed executed six days thereafter. Subsequently, plaintiff commenced the within action in equity for partition of the premises under the Act of May 10, 1927, P. L. 884, 68 PS §501, et seq., contending that the sheriff's sale to defendant inured to the benefit of both parties by reason of the prior cotenancy, and, as a matter of law, did not affect the status of the entireties estate, which continued thereafter, subject only to defendant's equitable claim for reimbursement of expenses advanced in connection therewith.

Defendant's answer admits the background facts and the conveyance of the property by the sheriff's deed to defendant, but denies plaintiff's present in-

terest in the premises or his right to partition. It further denies that the sheriff sold the premises to defendant, as alleged by plaintiff, averring to the contrary by way of new matter, that in fact the sheriff sold the same to the foreclosing mortgagee, and that "Shortly after the Sheriff's sale, the said Lansdowne Federal Savings & Loan Association assigned orally to the defendant, Esther A. Sharp, its right, title and interest in the said premises for the sum of $228.83 plus $1421.73," being the costs of sale and the alleged balance of the mortgage indebtedness, respectively, and directed the sheriff to make his deed to defendant to carry out such arrangement.

Plaintiff has now filed the motion presently before the court for judgment on the pleadings, contending at argument thereon that no defense to the requested partition has been set forth.

It is well settled, as plaintiff contends, that where two or more persons have a joint or common interest in an estate, none of them can purchase an encumbrance or outstanding title adverse to the whole and set it up against the others for the purpose of depriving them of their interests; in such a case, the purchase inures to the benefit of all of them: Weaver v. Wible, 25 Pa. 270; Keller v. Auble, 58 Pa. 410; Dickey's Appeal, 73 Pa. 218; Fisher v. Hartman, 165 Pa. 16; McGranighan v. McGranighan, 185 Pa. 340; Raker v. G. C. Murphy Company, 358 Pa. 339.

The same principle is controlling where one cotenant becomes the purchaser at a judicial sale even though initiated by strangers to the title: Gibson v. Winslow, 46 Pa. 380; Swisshelm's Appeal, 56 Pa. 475; Tanney v. Tanney, 159 Pa. 277; Enyard v. Enyard, 190 Pa. 114; Richards v. Richards, 31 Pa. Superior Ct. 509.

Upon similar considerations, a coowner who has acquired a subsequent tax title to the premises, either

directly, or by purchase from the tax-sale purchaser during the period of redemption, has in legal effect redeemed the property for the benefit of all the former tenants in common: Myers' Appeal, 2 Pa. 463; Maul v. Rider, 51 Pa. 377; Davis v. King, 87 Pa. 261; Faust v. Heckler, 359 Pa. 19; Hunt v. Mestrezat, 361 Pa. 415; Collins v. Wilkinson, 366 Pa. 108; Beers v. Pusey, 389 Pa. 117.

Defendant contends, however, that the rule of these cases does not apply where the cotenancy or joint estate has previously been extinguished and completely divested; under such circumstances, she argues, the fact that a common estate once existed should not forever bar one of the tenants from later acquiring full beneficial title to the whole, citing Lewis v. Robinson, 10 Watts 354; Kirkpatrick v. Mathiot, 4 W. & S. 251, and Reynolds' Estate, 239 Pa. 314. She further points to Pennsylvania Company for Insurance on Lives and Granting Annuities, to use, v. Broad Street Hospital, 354 Pa. 123, as authority for the proposition that the former entireties estate of plaintiff and defendant in the premises in question was wiped out in the present case the moment the sheriff's hammer fell and the property was bid in by the foreclosing creditor, so that she was fully at liberty immediately thereafter to make her own arrangements with the latter without accountability to plaintiff.

The applicable considerations in resolving the problem created by defendant's position are set forth in the following quotation from the opinion of the Supreme Court in Tanney v. Tanney, supra, 159 Pa. at pages 281-282:

"If, without collusion, Lawrence [a stranger who was the sheriff's grantee] had been a purchaser for himself with his own money, and had *afterwards* conveyed the lot to Lewis Tanney [one of the cotenants before the sheriff's sale], Lewis would have taken a

good title as against even his cotenants; *for the title of all the tenants, having, for the debt of all, passed by regular sale to a third party,* Lewis owed no duty thereafter to his cotenants with regard to it. But the purchase by Lawrence was only nominal; he merely acted for Lewis, and paid for it with Lewis's money, then reconveyed to him. The change in title was only in form; the interests of the cotenants remained the same; the deed to Lewis, if of any value, inured to the benefit of all, the same as if he had purchased the incumbrance without a sale. Each one of two or more tenants in common of land stands in a relation of confidence to his cotenants with reference to the common property. If one of them purchases an outstanding title, and undertakes to claim under it the common property as against the others, if they contest it, his claim will not be allowed; because it must be presumed that each, as regards the common interest, acts for all; the same principle is invoked as is enforced between all persons who occupy towards each other a fiduciary or confidential relation." (Italics supplied.)

We may fully concede the abstract correctness of the first portion of defendant's argument under appropriate facts, such as the first outlined in the above quotation from the Tanney case. We do not agree, however, that the entireties estate in the instant case was totally and completely lost and extinguished, at least as between plaintiff and defendant, or that the title thereto had fully passed to the creditor, at the time defendant alleges she took an assignment of the creditor's bid at the sheriff's sale. Certainly the Pennsylvania Company decision does not control the question: that case was concerned with the consequences of a sheriff's sale as between mortgagor and mortgagee, holding that the former could not legally compel the "redemption" of the mortgaged premises from the sale after the same had been knocked down by the

auctioneer even though the debt and costs be tendered before the acknowledgment and delivery of the sheriff's deed. The court was not confronted in the cited case, however, with any question of the respective rights and privileges of several mortgagors as between themselves during such interval. Indeed, the reference in the opinion to the analogy of an agreement of sale would seem to indicate that the legal title, as well as the right to possession, remains in the debtors until the acknowledgment of the sheriff's deed.

Lewis v. Robinson, and Kirkpatrick v. Mathiot, supra, obviously are not factually in point in the present case. In both, the outstanding tax title had remained unredeemed in the hands of a third party purchaser at tax sale for several years beyond the allowable time for redemption. When certain of the former coowners thereafter purchased such independent and indefeasible title on their own account, it was quite properly held that the circumstances should not retroactively benefit their former tenants in common. In the instant case, however, the mortgagee's purchase, even if assumed to be free of collusion with defendant, never actually ripened into full legal title, and its status and interest as a stranger to the entireties estate provided only a nominal and momentary interruption in even the equitable ownership thereof. Upon defendant's acquisition thereof for the exact amount of the debt and costs, in legal contemplation it amounted to no change in the beneficial interests of the parties; and the result was exactly the same as though defendant herself had been the successful bidder.

Reynolds' Estate, supra, also relied upon by defendant, is even less authority for her position. The dispute there arose between the representatives of a decedent's widow and his collateral heirs. After decedent's death, the interests of the latter were sold at judicial sale

to a stranger to the estate who represented none of the parties interested therein. The interests of the widow, however, were not affected thereby, the sale having been made expressly subject to her right of dower. Shortly thereafter, the report does not indicate how long, but it is clear that the stranger's title to the heirs' undivided interest was complete, the widow acquired the third party's estate, and, after enjoying the full ownership resulting from the merger thereof with her own right during the interim, died almost 30 years later. It was held that the collateral heirs of the original decedent had no claim upon the fund realized from a sale of the premises by the widow's estate. After pointing out that the original judicial sale had extinguished the interests of the collateral heirs, the opinion further observed at page 316 as follows:

"It is unnecessary to distinguish between the present case and those cited in support of appellants' contention, except to say that *this was not an outstanding adverse title that the widow acquired,* but the identical title by which appellants had held as tenants in common. So far as appears she was a bona fide purchaser; and at the time of her purchase, appellants being without estate in the land, no duty rested upon her with respect to them." (Italics supplied.)

In the present case, however, the whole title to the premises, including defendant's interest as well as that of plaintiff from which it was then undivided, was purportedly transferred by the sheriff's sale in satisfaction of an outstanding and adverse encumbrance against the entire estate. Defendant is not claiming, even if she could, as the purchaser merely of plaintiff's undivided interest in the entireties property so as to merge the same with her own original and parallel interest therein. To the contrary, she necessarily must rely upon the acquisition of the full and complete title

in the right of the mortgagee, which, in itself, must inevitably be considered adverse as to the whole estate of both parties as tenants by the entireties.

We believe that we must look to the realities of the situation presented by the within proceedings. Had defendant directly become the successful bidder at the sheriff's sale, whether by prior arrangement with the foreclosing creditor or otherwise and whether for the bare amount of the debt and costs or for some other amount, the precedents already mentioned leave no doubt but that her purchase would have inured to the benefit of the preëxisting entireties estate of which she was one of the tenants, subject, of course, to a claim for reimbursement of expenditures occasioned thereby. The only divergence from that plan in this case was that the agreement of the creditor thereto was reached immediately after the sale and before it had been confirmed and executed, instead of immediately prior thereto, under her version of the facts. We believe this to be a factual difference not amounting to a legal distinction. Insofar as either she or the creditor are concerned, the results are exactly the same whichever maneuver might have been followed. By the same token, we see no reason why the consequences to plaintiff's equity in the premises should be regarded in a different light.

The quasifiduciary responsibility resting upon tenants in common and joint tenants with respect to the interests of their cotenants, and the resulting rule of public policy above outlined, should not be made to depend upon finespun factual maneuvering and technical niceties of timing or tactical choice of procedural devices. Of course, cases will arise like the Lewis and Kirkpatrick decisions, supra, where there can be no real quarrel but that the cotenancy had long since ceased to exist, and under such circumstances it would

be unjust to charge a subsequent bona fide purchaser with the uncontemplated consequences of reviving such historical coownership. But in the absence of such clear cut and unequivocal factual disappearance of the common interest or estate, the normal rule of good faith should apply with the consequences stated above.

### Order

And now, May 9, 1958, for the reasons stated in the foregoing opinion, plaintiff's motion for judgment on the pleadings is granted, and judgment directing partition is hereby entered, with leave to proceed in accordance with law therein.