# Bird's Appeal.

Plaintiff and defendants were joint purchasers of certain car-works and machinery, the plaintiff owning one-fourth and defendants the other three-fourths. After the purchase the defendants, who were practical nail-makers, induced plaintiff to sell his interest to them. The defendants having subsequently failed to raise money in Northumberland, to carry on a nail-factory, resolved to remove their shops and machinery to Milton, where certain capitalists offered them financial and other inducements. Plaintiff then filed a bill in equity, alleging that when plaintiff agreed to sell, defendants pledged themselves that the said shops should not be removed; that upon the faith of these representations the plaintiff sold; that said removal would work irreparable injury to plaintiff, as he owned a number of lots adjoining the mill whose value would be enhanced by the continuance of the works, and praying for an injunction to restrain the removal, and for a reconveyance of his undivided fourth part. The masters, to whom the case was referred, found that the averments of fraud and misrepresentation were not sustained, and that the purchase-money had been fully paid. *Held*, affirming the court below, that the bill was properly dismissed, and that the contract could not be rescinded.

June 12th 1879.    Before SHARSWOOD, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ.    MERCUR and WOODWARD, JJ., absent.

Appeal from the Court of Common Pleas of *Northumberland county*: Of May Term 1879, No. 47.

This was a bill in equity filed by Joseph Bird against Charles A. Godcharles and others, trading as C. A. Godcharles & Co., to restrain defendants from removing certain shops and machinery. The material facts are stated in the opinion of this court. The court, Rockefeller, P. J., made a decree confirming the report of the masters, dissolving a special injunction which had been granted, and dismissing the plaintiff's bill with costs. From this decree Bird took this appeal.

*S. P. Wolverton* and *L. H. Kase*, for appellant.—The appellees did not want Bird in the firm, and in consideration that he would withdraw therefrom, they agreed to change the works into a nail-factory, and thus enhance the value of plaintiff's land adjoining. It was the understanding when the shops were bought, that they were to remain in Northumberland. The masters' findings were against the evidence. The inducement to Bird to sell was, that a nail-factory should be established, and that the shops would not be removed. A permanent injunction should be granted to prevent such removal.

*S. B. Boyer*, *W. J. Greenough* and *Joshua W. Comly*, for appellees.—The masters were bound to find, from the testimony, that there was no fraud, and if fraud did not exist, there was no remedy. The question of removal was one of veracity between

Bird and Godcharles. The appellees were industrious workmen who did not want any one but a practical nail-maker in the firm. They had limited means and tried to raise money in Northumberland and failed. It was their interest to remain there if they could have procured the necessary funds which were offered them by capitalists in Milton. If they had agreed in writing and under seal, no court of equity would have granted a permanent injunction when, thereby, the defendants would sustain a heavy loss, and the plaintiff would receive very little benefit.

Mr. Justice PAXSON delivered the opinion of the court, June 23d 1879.

It would serve no good purpose and protract this opinion to an unreasonable extent, were we to review this case in detail. The printed testimony covers one hundred and eighty-three pages, while the masters' report covers one hundred and seventy-five pages. Yet the contention was about a very simple matter. The plaintiff and the defendants became joint owners by purchase, at a judicial sale, of the real estate and property of the Northumberland Car and Manufacturing Company, situate in the borough of Northumberland; the plaintiff being the owner of the undivided one-fourth and the defendants being together the owners of the remaining three-fourths. The bill avers that subsequently to the purchase of the property, the defendants formed a copartnership or company under the name of Charles A. Godcharles and Company, for the alleged purpose of manufacturing nails, in the said borough of Northumberland, and upon the premises referred to; that the said Godcharles, for himself and in behalf of the other defendants, falsely and fraudulently represented to the plaintiff that they desired " no one associated with them in the business but practical nail-makers, and requested him, the plaintiff, to agree to sell his interest in the shops and machinery to them, to enable them to engage in the business; and they pledged themselves that the said shops and factory should not be taken down or removed from the town of Northumberland," &c. The bill further avers, that acting upon the faith of these representations, the plaintiff sold his interest in the real estate for the sum of $3000, payable by two notes, one for $1000 at three months, and the other for $2000 at six months; that in violation of their pledges and agreement, the defendants were about to remove the machinery and works to Milton, Pennsylvania, and commence business at that place; and that said removal would work irreparable injury to the plaintiff, for the reason that he is the owner of a tract of land surrounding the works at Northumberland, and the continuance of the works would enhance the value of his lots there, and enable him to sell the same. The prayer was, that the defendants be specially enjoined from removing the shops, machinery and fixtures, and for a reconvey-

ance of the undivided fourth part of said premises.  The court below granted the special injunction and continued it for over three years and a half, when, upon final hearing it was dissolved.

The learned masters find that the averments of fraud and misrepresentation are not sustained, and that the purchase-money has been fully paid.  After a careful examination of the evidence, we see no reason to disturb their finding.  The defendants evidently intended, when they bought this property, to alter it into a nail-factory, and continue the business in Northumberland.  Their homes and associations were there and they had no thought of going elsewhere.  But they needed material aid and could not get it in Northumberland.  They were practical men, skilled in the business, but of limited means.  They required $20,000 of additional capital.  Their contracts for new machinery amounted to over $10,000.  The plaintiff and other citizens of Northumberland, while anxious to have the shops continued there, were either unable or unwilling to advance the required capital.  The defendants made, apparently, an earnest effort to get the money there— afterwards attempted it in Philadelphia—but without success.  The citizens of Milton finally offered to donate the ground necessary for the works, and to loan the company the sum required.  We have no doubt the removal of the works to Milton was a disappointment to the plaintiff, and it may be a disadvantage in the sale of his lots.  But I have looked in vain through the testimony for any sufficient evidence of a binding contract between the plaintiff and the defendants, that the works should not be removed, much less of any fraud or misrepresentation.  There was talk about not removing, and I have no doubt in the most perfect good faith, but it does not reach the standard of a binding contract.  Moreover, if there had been such contract, it was one that a chancellor would be loth to enforce specifically, in the face of the fact that the defendants could not set up their works at Northumberland for want of means.  It is not the province of equity to compel the performance of impossible or unreasonable things.  For a mere breach of contract, the law, in ordinary cases, furnishes a sufficient remedy.

There is another matter that may be noticed.  The plaintiff claims to rescind, and prays for a reconveyance for his undivided fourth.  Yet he does not aver in his bill, nor has he proved the repayment, or an offer to repay the purchase-money.  On the contrary we gather from the record that the plaintiff received the balance of the purchase-money from the defendants, by the payment of the second note, after bill filed and injunction granted, and continues to hold it.  This, if there were nothing else in the case, would be fatal to the plaintiff's demand for a rescission on the ground of fraud.

> Decree affirmed and appeal dismissed at the costs of the appellant.