## Tanney et al. *v.* Tanney, Appellant.

[Marked to be reported.]

*Tenants in common—Purchase of incumbrance or outstanding title.*

Where several persons have a joint or common interest in an estate, one of them may not purchase an incumbrance or an outstanding title and set it up against the rest for the purpose of depriving them of their interests.

*Purchase by tenant in common at tax sale.*

If a tenant in common purchases, with his own money, in the name of another, the estate in common at a tax sale, the purchase inures to the benefit of all the tenants in common.   All that the purchaser can demand from the others is contribution to the expenses by which the common interest has been relieved from embarrassment.

*Statute of limitations—Resulting trust—Act of April* 22, 1856.

A purchase by a tenant in common at a tax sale, of the estate held in common, does not create a resulting trust, within the meaning of the act of April 22, 1856, P. L. 532, so as to bar the other tenants in common from the right to institute an action of ejectment after the expiration of five years from the tax sale.

*Estoppel—Ignorance of material facts—Inquiry.*

There can be no ratification or estoppel where the act which is set up as constituting ratification was done in entire ignorance of the material facts, prompting action.

Where tenants in common accept the proceeds of a tax sale of the estate in common in ignorance of the fact that the estate had been bought by one of their own number, they will not be estopped from subsequently avoiding the deed to the purchaser.   In such a case if there was nothing to excite suspicion or to stimulate inquiry there was no duty upon them to make inquiry before accepting the money.

*Paper-books—Argument—Citation of cases—Practice.*

On an appeal to the Supreme Court, counsel in the preparation of their argument should correctly state the volume, page and names of the parties in each case cited.

Argued Nov. 7, 1893. Appeal, No. 265, Oct. T., 1893, by defendant, Lewis H. Tanney, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1891, No. 754, on a case stated, for plaintiffs, William H. Tanney et al. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Ejectment and case stated.

The facts appear by the opinion of the Supreme Court.

The court entered judgment for plaintiffs in an opinion by WHITE, J.

*Errors assigned* were (1) entry of judgment for plaintiffs; (2) refusal of judgment for defendant.

*Geo. H. Quail*, for appellant.—The purchase of a trustee at his sale is not void, but only voidable, as a constructive trust, at the option of the cestui que trust, and in such cases time is to be counted from the date of the transaction and not from the date of actual notice : Dowing v. Garard, 24 Pa. 52 ; Fleming v. Culbert, 46 Pa. 498 ; Campbell v. Boggs, 48 Pa. 524.

Plaintiffs ratified and confirmed the sale to defendant by receiving and accepting the surplus proceeds. In this they have estopped themselves from questioning its validity : Adlum v. Yard, 1 Rawle, 163 ; Trustees of Bank of U. S., 2 Pars. 110 ; Furness v. Ewing, 2 Pa. 479 ; Wilkins v. Anderson, 11 Pa. 399 ; Smith v. Warden, 19 Pa. 424 ; Duff v. Wyncoop, 74 Pa. 300.

If the land owned by tenants in common be sold for taxes, and one of them, before the time of redemption has expired, buy it from the purchaser at the tax sale, there is a constructive trust in favor of his co-owners ; but, if he buy it after the time of redemption for his own use, there is no such trust in favor of his co-owners: Lewis v. Robinson, 10 Watts, 354 ; Kirkpatrick v. Mathiot, 4 W. & S. 251 ; Duff v. Wilson, 72 Pa. 442 ; Roy v. Townsend, 78 Pa. 329 ; Davis v. King, 87 Pa. 261. The act of April 22, 1856, P. L. 532, applies to all cases of constructive trust: Evans' Ap., 81 Pa. 278 ; Way v. Hooton, 156 Pa. 8 ; Christy v. Sill, 95 Pa. 380.

A resulting trust must arise, if at all, at the inception of the title, and the statute begins to run from the time of the cre-

ation of the trust—from the time of the transaction or transactions which created the trust: Waterman v. Brown, 31 Pa. 161; Barnet v. Dougherty, 32 Pa. 371; Dowing v. Garard, 24 Pa. 52; Hanna v. McConkey, 11 Phila. 549; Musselman v. Eshleman, 10 Pa. 394; Fleming v. Culbert, 46 Pa. 498; Campbell v. Boggs, 48 Pa. 524; Christy v. Sill, 95 Pa. 380; Morrell v. Trotter, 39 Leg. Int. 256; Maul v. Rider, 51 Pa. 383; Cross's Ap., 97 Pa. 471; Hollinshead's Ap., 103 Pa. 158; Clark v. Trindle, 52 Pa. 492; Ashurst's Ap., 60 Pa. 290; Best v. Campbell, 52 Pa. 476; Douglass v. Lucas, 63 Pa. 9; McNinch v. Trego, 73 Pa. 52; Evans' Ap., 81 Pa. 278; Miller v. Bealer, 100 Pa. 583; Way v. Hooton, 156 Pa. 8.

An action to enforce a trust may be by bill in equity or ejectment. The following cases were by action in ejectment: Jackman v. Ringland, 4 W. & S. 149; Barnet v. Dougherty, 32 Pa. 371.

The act of 1856 is a complete bar: Mobley v. Oecker, 3 Yeates, 202; Beckford v. Wade, 2 Vesey, 94; Kenyon v. Stewart, 44 Pa. 179; Warfield v. Fox, 53 Pa. 382; Pratt v. Eby, 67 Pa. 396; Hegarty's Ap.. 75 Pa. 517; Douglass v. Lucas, 63 Pa. 12; Folmar's Ap., 68 Pa. 482; Hunt v. Wall, 75 Pa. 413; McCort's Ap., 98 Pa. 33; Hollinshead's Ap., 103 Pa. 158; Cochran v. Young, 104 Pa. 333; Dolph v. Hand, 156 Pa. 91; Way v. Hooton, 156 Pa. 8.

*L. P. Stone*, for appellees.—Plaintiff took advantage of the confidence reposed in him, and of his superior knowledge, and should be deemed a trustee ex-maleficio, and the case is not within the act of 1856: Seichrist's Ap., 66 Pa. 237; Squire's Ap., 70 Pa. 266; Boynton v. Housler, 73 Pa. 453; Christy v. Sill, 95 Pa. 380; Davis v. King, 87 Pa. 261.

Defendant, being tenant in common with his brothers and sisters, and agent in charge, was prohibited under law from acquiring any right antagonistic to them, as he evidently intended; he could not buy in incumbrances, control them, have the property sold and become the purchaser, neither could he buy in the property at a tax sale, except to hold for the benefit of his brothers and sisters; Chorpenning's Ap., 32 Pa. 316; Sheriff v. Neal, 6 W. 534; Jones v. Coonway, 4 Yeates, 111; Harrisburg Bank v. Foster, 8 Watts, 16; McDowell v. Potter, 8

Pa. 189; Keller v. Auble, 58 Pa. 410; Myer's Ap., 2 Pa. 463; Weaver v. Wible, 25 Pa. 270; Lloyd v. Lynch, 28 Pa. 419; Beegle v. Wentz, 55 Pa. 369; Duff v. Wilson, 12 Pa. 442.

Defendant's intention can only be adjudged by what he did. Did he buy intending to save the property to himself, his brother and sisters? He does not say so, his acts do not indicate it, but the law says, he holds the property, the manual possession for .them, as preserver of their rights; the title he never acquired: Hoffman v. Srohecker, 7 Watts, 86; Swisshelm's Ap., 56 Pa. 475; Church v. Rowland, 64 Pa. 443; Duff v. Wilson, 72 Pa. 442; Davis v. King, 87 Pa. 261; Bisp. Eq., 3d ed. 273.

OPINION BY MR. JUSTICE DEAN, December 30, 1893:

The parties to this suit filed a case stated in the nature of a special verdict for the opinion of the court. The material facts agreed upon are these: William Tanney, the ancestor of these parties, died intestate in 1857. At his death, he was the owner of a lot on which was a frame dwelling house in the city of Pittsburgh. He left a widow, Amelia Tanney, and four children, William, Emma, Julia and Lewis; the whole family occupied the property until 1869. At this time the children had married, and all had left the city; the property was thereafter occupied by tenants, and the rent, with consent of the children, was paid to their mother, Amelia, who died December 10, 1881. Up to January 1, 1877, this defendant, Lewis H. Tanney, had expended in improvements, payment of taxes and municipal liens, $500, no part of which was repaid him by his brother and sisters, his cotenants.

William Tanney, one of the plaintiffs, at the same time had also paid out $500 for the same purposes, no part of which was repaid by the sisters. The taxes for 1878 and 1879, amounting to $40.73, not having been paid, they were entered as a lien, scire facias issued, judgment had, execution issued, and the property sold at sheriff's sale. One John J. Lawrence became the ostensible purchaser at a bid of $500, and deed was duly acknowledged to him March 12, 1881. Lewis H. Tanney, the defendant, by agreement, furnished Lawrence the $500 purchase money paid to the sheriff, and Lawrence conveyed the property to Lewis, March 24, 1881, who soon after took possession and has since retained it. The $500 was appropriated, to costs

and taxes $63.22, to the widow and four children the balance $236.78, the widow's share being $78.00, and $39.46 for each of the children.   These plaintiffs each executed receipts dated respectively July 19, August 18 and August 27, 1881, for these shares.   They are all alike, and this is a copy, without signature, of each one of them : " Received August 27, 1881, of A. S. & W. S. Moore, the sum of thirty-nine and 46–100 dollars in full of my share of balance due the heirs of William Tanney, deceased, out of the sale of real estate in Allegheny County, Pa., sold upon execution issued upon judgment No. 37, September Term, 1879, in the Court of Common Pleas of Allegheny County, No. 1, D. T. D."

When the money was paid, all the distributees were of full age ; William, Emma and Lewis lived at the time in Beaver county, and Julia in Cleveland, Ohio ; the money was paid and receipts given at their homes ; A. S. & W. S. Moore, who paid the money and took the receipts, were residents of Beaver county.   Up until the dates of the receipts, no one of them, except Lewis, had any knowledge of the filing of the liens or the sheriff's sale of the property.   As late as the latter part of 1879, at the solicitation of Lewis, all the parties had executed and delivered a power of attorney to Alderman Leslie, authorizing him to dispossess a delinquent tenant, and relet the property ; under the power, he obtained possession and rented to a new tenant June 1, 1880, and thereafter accounted to Lewis for the rents. This action of ejectment was not begun until January 3, 1891, more than nine years after the sheriff's sale and the payment of the purchase money.

On this statement of facts, it was agreed that the court should enter such judgment " As in their opinion the law and equities of the case will warrant."

The court entered judgment for plaintiffs for the undivided three fourths of the land, subject to the payment by each plaintiff to defendant of the sum of $39.46, the share received of the purchase money at sheriff's sale, with interest from July 19, 1881.   From this judgment defendant prosecutes this appeal, assigning for error the judgment for plaintiffs and the refusal of the court to enter judgment for defendant.

If, without collusion, Lawrence had been a purchaser for himself with his own money, and had afterwards conveyed the

lot to Lewis Tanney, Lewis would have taken a good title as against even his cotenants ; for the title of all the tenants, having, for the debt of all, passed by regular sale to a third party, Lewis owed no duty thereafter to his cotenants with regard to it.   But the purchase by Lawrence was only nominal ; he merely acted for Lewis, and paid for it with Lewis's money, then reconveyed to him.   The change in title was only in form ; the interests of the cotenants remained the same ; the deed to Lewis, if of any value, inured to the benefit of all, the same as if he had purchased the incumbrance without a sale.   Each one of two or more tenants in common of land stands in a relation of confidence to his cotenants with reference to the common property.   If one of them purchases an outstanding title, and undertakes to claim under it the common property as against the others, if they contest it, his claim will not be allowed ; because it must be presumed that each, as regards the common interest, acts for all ; the same principle is invoked as is enforced between all persons who occupy towards each other a fiduciary or confidential relation.

The rule, as deduced in Weaver' v. Wible, 25 Pa. 270, from the many authorities there cited, is that " Community of interest produces community of duty."   And further : " A conveyance to one of several tenants in common, or a deed to one of two devisees of the same land, shall enure to the benefit of all who came in under the same title, and are holding jointly or in common.   Where several persons have a joint or common interest in an estate, it is not to be tolerated that one shall purchase an incumbrance or an outstanding title, and set it up against the rest for the purpose of depriving them of their interests.   Chancellor KENT with great truth remarked, ' that such proceeding would be repugnant to a sense of refined and accurate justice, and would be immoral, because it would be against the reciprocal obligation to do nothing to the prejudice of each other's claim which the relationship of the parties created.'   All that can be demanded is contribution from each to the expense of any purchase which releases the common interest from embarrassment."   And, as is said in Chorpenning's Appeal, 32 Pa. 315, " the rule is inflexible, without regard to the consideration paid, or the honesty of intent.   Public policy requires this, not only as a shield to the parties represented, but as a guard against temptation on part of representatives."

In Meyer's Appeal, 2 Pa. 463, these were the facts : Four of the five children, tenants in common of a tract of land, gave a power of attorney to their brother, the fifth one, authorizing him to redeem land of their ancestor which had been sold at a tax sale ; the brother did not redeem, but, after the title had become absolute in the purchaser, bought it from him with his own money in his own name, and then claimed the land to the exclusion of his cotenants. Held, that the sale was voidable at the option of the other heirs.

The case before us is stronger on its facts against the defendant than the one cited, for Lewis Tanney was himself the purchaser at the sale for taxes, while in Meyer's Appeal the purchaser was a stranger, who, of his own volition, had bought and paid the consideration money out of his own pocket. That the sheriff here made the sale for taxes on a municipal lien, in no way changes the application of the principle. The sale resulted from the joint default of all the tenants in common ; it was the duty of all to share equally in the payment of taxes ; but Lewis had immediate charge of the common property, for he procured the power of attorney for Leslie, and to him Leslie accounted for the rents up to the date of the sheriff's sale ; when he purchased with his own money, the purchase enured to the common benefit ; that is, it discharged the lien for taxes, but their interests were not divested by the sale unless they ratified it. What we have said proceeds on the presumption the law raises,— if Lewis had been openly the purchaser at sheriff's sale and had taken the deed in his own name, the interests in the land would have remained the same, and the possession would have been constructively in all as tenants in common, notwithstanding the naked legal title was in Lewis.

Nor will the statute of limitations of the 22d of April, 1856, under the facts of record, avail the defendant. That act says : "No right of entry shall accrue or action be maintained to enforce any implied or resulting trust as to realty, but within five years after such equity or trust accrued." These plaintiffs are not seeking to enforce an implied or resulting trust ; they are demanding possession of the undivided three fourths of their land from which defendant wrongfully keeps them. In reply, defendant admits they once had title, but alleges, by the sheriff's deed their interest was divested and vested in him,

and if plaintiffs have any claim, it is because a trust is implied or has resulted from his purchase, and, as the action was not brought within five years, the plaintiffs are barred by the act of 1856.

They answer that, as to them, the sheriff's deed is a nullity, their relation as tenants in common was not changed by it, for the policy of the law forbids such an attempt by Lewis to oust his cotenants from the common inheritance; especially in view of the fact, that, at the date of the sheriff's sale, he was in the active management of the property, to whom Leslie accounted for rents and expenditures. They claim no benefit from his sheriff's deed, and aver that it cannot affect their right, when they elect to avoid it. In this they are correct. If Lewis had purchased in his own name an outstanding better title to the common property, he would have held it as trustee for all, and it would have been so decreed, on reimbursing him their respective shares of his outlay. But he purchased no outstanding title in this case. The legal title and possession in all the tenants were indisputable from the death of the father in 1857 until the acknowledgment of the sheriff's deed in 1881; each, during that time, was, with reference to the common property, constructively trustee for the others; neither could, by a collusive arrangement with a stranger, wrest from the others their interests and appropriate the whole; the colorable sheriff's sale, permitted, if not prompted, by Lewis, can be no more effective for that purpose, than if he had by his voluntary deed conveyed the whole to Lawrence, and then had taken a reconveyance to himself. Nothing short of an unequivocal, hostile possession under the sheriff's deed for twenty-one years would have been effectual to bar the right of entry of the cotenants under the common title which came to them from their father in 1857. It is not a resulting trust. An implied or resulting trust is where land is purchased in the name of one person, and the money paid by another; or where a purchase is made by a trustee of land in his own name, with trust money; or where a purchase of land is made by a partner in his own name with partnership funds; or where a conveyance has been obtained by fraud; these, and cases of like character, come under the head of implied or resulting trusts.

Here, one being privy in estate legal and equitable with three

others, by a covinous device attempts to strip his cotenants of their shares, and appropriate the whole. They could, with full knowledge of the transaction, accept the purchase money and ratify it; or they could elect to treat the sheriff's deed as a mere nullity, and rest on their undisputed title for their right to possession. This last, they allege, is their attitude here; the defendant replies, they accepted their shares of the surplus purchase money, and are estopped now from avoiding the sheriff's deed. The facts of record must form the basis of judgment in this particular, and we concur with the court below, that not only do they fail to show plaintiffs knew who was the real purchaser, but these facts show affirmatively they did not know their brother was. There can be no ratification or estoppel where the act which is set up as constituting ratification was done in entire ignorance of the material facts, prompting action.

Nor was there imposed upon them the duty of inquiry before accepting the money, for there was nothing to excite suspicion or to stimulate inquiry. The purchase by the brother was concealed by a method most likely to lure to inaction; a public sale to a stranger, on an execution at the foot of a debt which they knew they owed, and which had been judicially ascertained, might well move them to the conviction that their property had passed to a stranger. To say they could have discovered the facts by reasonable diligence is of no weight in view of the circumstances. As is remarked in Maul v. Rider, 59 Pa. 167, a case in some of its features resembling the one before us: " There are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful." As they did not know the material fact here, that Lewis was the purchaser at sheriff's sale, when they accepted the money, they are not estopped from now asserting their right.

As to the alleged hardship of imposing upon one tenant in common the care of the common property and expenditure of money in excess of his receipts, for the benefit of his cotenants who live remote from it, and are either unable or unwilling to contribute their share, and then prohibiting him from being a bidder to protect his own interests, such hardship is more apparent than real. The common property is chargeable with

the common debt reasonably necessary for its preservation; any one of the owners can insist on an equitable accounting, whereby at the foot of a judicial decree satisfaction can be had; further, the court of common pleas is always open for proceedings in partition, by which the property can be divided or sold, and the proceeds in excess of equitable charges divided among the tenants in common. But neither good morals nor law will sustain this sort of proceeding on the part of one tenant in common, to oust his brother and sisters from the common inheritance.

There is a fact disclosed in this case, not by any means exceptional, to which we call the attention of the bar. Care and accuracy in the preparation of paper books is as much a professional duty, as pointed and logical presentation of the client's cause. While not seldom many authorities are cited which have little or no bearing on the questions to be decided, still our duty requires of us an examination of all those which counsel point out to us as sustaining his argument. In view of this, he should correctly give us the volume, page and names of the parties in each citation. As an illustration of the unnecessary labor imposed by careless citation, in the appellee's paper book eleven cases are cited, as ruling that a tenant in common is prohibited by the policy of the law from acquiring, as against his cotenants, an antagonistic title. The third case cited is James v. Conway, 4 Yeates, 111. There is no such case in 4 Yeates. We turned to the volume and page, and found Rodgers v. Gibson, a case ruling that a judgment creditor is not within the protection of the recording acts; we then turned to the names of parties in the table of cases given in the beginning of the volume, and find no case of James v. Conway; then to the index at the end of the book, and found, after careful examination, under the head of " Limitation of Actions," what occurred to us as a possible reference, bearing on this case, " That in case of fraud the statute of limitations only commences to run from the time the right of action accrues; " that referred to page 109; on turning to that page, we find a case of Jones v. Rees's Executors, one of whom is named Conoway, ruling that where a free negro, ignorant of his freedom, had in the early days of the commonwealth been sold as a slave, his right of action for his services, against those who fraudulently

held him, accrued only when he had discovered the fraud. We infer this is the case meant, for although the bearing of this decision on the case in hand is somewhat remote, no other in that book has any bearing on it at all. If this inference be correct, then neither the name of plaintiff, defendant, nor page is correctly given in the paper book. Of course, whether a case is in point is a matter of opinion in which we often have occasion to differ from counsel, but the name of parties, volume and page are facts, misstatements of which are the result of carelessness and indifference. We have a right to expect of counsel such accuracy of reference as will enable us to determine readily where the law cited by them can be found; it is our duty then to examine and consider it. Another case cited among the same eleven is McDowell v. Potter, 8 Barr, 19; this should be page 189; the next, 8 Watts, 16, should be page 12; then Duff v. Wilson, Pa. 442, is cited, the volume not given. There are a number of other errors, all going to show, either careless preparation of manuscript or indifferent proof reading; it is not material which. The duty of counsel to secure accuracy is just as imperative in reading proof as in the preparation of manuscript; if they neglect to do either, it is often impossible for us to give to their causes that critical examination their importance demands. We are led to these remarks by what seems to us a growing evil, which, on being brought to the attention of the profession, we are confident will be cured.

The judgment is affirmed and appeal dismissed at costs of appellant.