## Stimson, Appellant, *v.* Stimson.

Argued November 27, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Adda Lutz Ferguson,* for appellant.

*Paul Reilly,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 4, 1943:

To a bill in equity which is somewhat of a medley of allegations and of claims defendant filed preliminary objections. The court sustained these and dismissed the bill.

The parties were married in 1912. In 1919 they purchased premises 167 Harvey Street, Germantown, Philadelphia, for $7,500 of which plaintiff says she contributed $6,000, as well as an additional sum of $2,000 for furnishing the property. Title was taken by them as tenants by the entireties. At the same time they placed a mortgage on the property of $6,500, the proceeds of which were used in improving and renovating the premises. The parties thereafter occupied the place as their residence, and defendant, who was a physician, established his office there. According to the averments of the bill, defendant, in 1923, made false statements to other physicians whereby he induced them to certify that plaintiff was insane, the result of which was that she was confined in a mental institution during the latter part of that year and the beginning of 1924. Again, in September, 1924, defendant caused plaintiff to be committed to another asylum where she was detained for a period of nine months. In 1925 he had a guardian appointed for her estate. In March, 1927, she was denied by defendant admission to their residence. In September, 1929, plaintiff obtained a divorce. For some time in the latter part of 1929 and the beginning of 1930 she again occupied a room in the Harvey Street premises. The bill

alleges that in January, 1930, defendant entered into a collusive agreement with one Gertrude R. Gilmore whereby the latter obtained an assignment of the bond and mortgage on the property, judgment was immediately entered on the bond, and notice was served on plaintiff that unless arrangements were made at once concerning the property the premises would be sold at sheriff's sale. As a result of this threat, not knowing, as she claims, that Gertrude R. Gilmore was a straw party for defendant in the purchase of the mortgage and was being used to deceive her, plaintiff entered into an agreement, in April, 1930, for the sale of the property to one Agnes Edna Miller, a straw party; a deed was executed to the latter who immediately re-conveyed the premises to defendant. It is stated that at that time the market value of the property, subject to the mortgage of $6,500, was $13,500. Plaintiff admits that she received all of the purchase money, $8,250, but avers that that sum was inadequate to compensate her for her investment in the property, for its subsequent enhancement in value, and for the exclusive use of the premises by defendant from 1926 to the present time. She asserts that by reason of defendant's conduct in having her confined in insane asylums and procuring the appointment of a guardian of her estate she has had great difficulty in obtaining and keeping employment. Although she has consulted many attorneys during the period from 1926 to 1940 they refused to represent her upon learning of her alleged insanity, and for these reasons she was unable to institute proceedings before the filing of the present bill in August, 1941; being without advice of counsel she did not sooner learn, and by her own efforts could not have learned, of the fraud and deception practiced upon her by defendant. The bill prays for an order upon defendant to account for his exclusive use and occupancy of the Harvey Street premises from 1926 to the present time, for a decree declaring the deed to Agnes Edna Miller and the deed from her to defendant to be

null and void, for an order on defendant to pay to plaintiff damages for mental suffering and financial loss, and for further and general relief.

Clearing away non-essentials which characterize the bill, it appears that the chief object of plaintiff's attack is the transaction whereby she gave up her interest in the Harvey Street property under the belief, induced by defendant, that it was about to be swept away by the action of a bona fide holder of the mortgage. She points, with justification, to the principle that when two or more persons have a joint or common interest in an estate none of them can purchase an incumbrance or outstanding title and set it up against the others for the purpose of depriving them of their interests: *Weaver v. Wible,* 25 Pa. 270; *Tanney v. Tanney,* 159 Pa. 277, 28 A. 287; *Enyard v. Enyard,* 190 Pa. 114, 42 A. 526. Therefore, if Gertrude R. Gilmore was a straw party for defendant in the purchase of the mortgage, and he, in pursuance of a scheme to coerce plaintiff into selling, entered judgment in Gertrude R. Gilmore's name and threatened execution, concealing the fact that he was the real assignee of the mortgage, there would be ground for plaintiff's claim that she was the victim of fraud.

But plaintiff's case falls for two reasons. The first is that she wishes to set aside a deed, for which she received a consideration of $8,250, without offering to return the money. One who seeks equity must do equity. A conveyance cannot be rescinded upon the ground of fraud and a reconveyance ordered unless there be an offer to repay the purchase money and thus to place the adverse party in statu quo: *Bird's Appeal,* 91 Pa. 68, 70; *Nulton's Appeal,* 103 Pa. 286, 297; *Lyle v. Shay,* 165 Pa. 637, 642, 30 A. 940. The second reason is plaintiff's gross laches in asserting her rights. These proceedings were begun more than eleven years after the conveyance of the property. When the fact of laches appears upon the face of the bill it can be taken advantage of by the filing of preliminary objections: *First*

*National Bank of Pittston v. Lytle Coal Co.,* 332 Pa. 394, 399, 3 A.2d 350, 352. "He who would rescind a contract by reason of fraud must act promptly . . . A contract induced by fraud is valid unless the party defrauded elects to rescind it within a reasonable time": *Kinter v. Commonwealth Trust Co.,* 274 Pa. 436, 439, 440, 118 A. 392, 393. It is true that the question of laches does not depend on the lapse of a certain definite time after the accrual of the cause of action, but whether, under the circumstances of the particular case, plaintiff is chargeable with want of due diligence in seeking redress: *Bangert v. Provident Trust Co.,* 314 Pa. 442, 446, 171 A. 564, 566; *First National Bank of Pittston v. Lytle Coal Co.,* 332 Pa. 394, 396, 3 A.2d 350, 351. Plaintiff seeks to excuse her delay by claiming she did not know the true facts during all these years; it is not enough, however, merely to aver ignorance; there must be an explanation as to why the ignorance was of such duration, and when and how knowledge of the fraud was obtained, so that the court may determine whether proper effort has been made to ascertain the facts: *Kinter v. Commonwealth Trust Co.,* 274 Pa. 436, 442, 118 A. 392, 393, 394; *Riley v. Boynton Coal Co.,* 305 Pa. 364, 370-372, 157 A. 794, 795, 796; *Keaggy v. Lightcap,* 320 Pa. 8, 181 A. 474. In the present case there was enough from the very start to excite the suspicion of plaintiff and to stimulate inquiry. The notice to her of the entry of judgment on the bond and the threat to sell the premises came from one who she knew was defendant's attorney, he having communicated with her in that capacity only two weeks before. She does not claim to have been unaware of the fact that it was defendant who was purchasing her interest; indeed she could not make such a claim in good faith since it was stated in the agreement of sale that all the consideration money was to be paid to her alone; the deed of reconveyance to defendant was executed at the same time as the deed to Agnes Edna Miller, and defendant occupied the prem-

ises thereafter just as before. Nor is it alleged that he sought to prevent discovery by any additional, independent act of deceit or concealment which might have excused her delay in ascertaining the truth: *Bailey v. Jacobs,* 325 Pa. 187, 189 A. 320; *Barnes & Tucker Co. v. Bird Coal Co.,* 334 Pa. 324, 5 A.2d 146. Her alleged inability to obtain lawyers is a lame excuse; the records of the various proceedings referred to in the bill show that in each of them she was represented by counsel. Moreover, the facts concerning the Harvey Street property were all matters of record; their significance would have been apparent to any lawyer and did not depend upon any question of plaintiff's sanity.

The prayer of the bill for an accounting for defendant's use and occupancy of the premises cannot be sustained. Until the parties were divorced in 1929 they were tenants by the entireties, each being seized of the whole estate and entitled to possession; therefore plaintiff could not have demanded an accounting for the rental value of the premises during their marital period: *Stuckey v. Keefe's Executors,* 26 Pa. 397, 401; *Wakefield v. Wakefield,* 149 Pa. Superior Ct. 9, 25 A.2d 841. After the divorce, the parties having become tenants in common so far as the rents of the real estate were concerned, plaintiff might have been entitled to recover, in an action at law, one-half of the rental value of the property (*O'Malley v. O'Malley,* 272 Pa. 528, 116 A. 500; *Cornelius v. Cornelius,* 104 Pa. Superior Ct. 455, 160 A. 150; Act of June 24, 1895, P. L. 237) were it not for the fact that she admits she was in part possession of the premises for some time between the date of the divorce and the conveyance of the property, and for the added reason that the statute of limitations precludes recovery for that period. So far as the claim relates to the rental value of the property after the execution of the deed in 1930 it falls with her failure to obtain a rescission of that conveyance. As to the prayer for damages for "mental suffering and financial loss", (presumably re-

74

ferring to her confinement in mental institutions at defendant's instigation), it need only be said that even if she could sue for a tort committed by defendant during the period while they were still married (as to which see 30 C. J. 715, §319; 27 Am. Jur. 196, §594; *Smith v. Smith,* 14 D. & C. 466), and even if such a cause of action were properly embraced in the present bill (as to which see *Gliwa v. United States Steel Corporation (No. 2),* 330 Pa. 515, 199 A. 916), any attempt to obtain redress for such alleged injury has long been barred by the statute of limitations and by the laches which permeates these proceedings.

Order of the court dismissing the bill affirmed at plaintiff's costs.