## Morehead v. Overton

*Linn B. Washington,* for plaintiff.
*Allen N. Brunwasser,* for defendant.

BROSKY, J., December 6, 1965. — This action in equity is presently before the court upon exceptions by both parties to the trustee's report. From the pleadings and the record we find the following facts:

1. The parties hereto were married on October 4, 1944, and in 1951 they bought a piece of real property known as 714 Copeland Street in the City of Pittsburgh.

2. On August 2, 1958, plaintiff left this home which they had jointly occupied, and on March 23, 1959, a decree in divorce from the bonds of matrimony was granted to plaintiff herein.

3. Defendant continued to live in one part of the house and received rents each month, from August 2, 1958, until the sale of the property, in the amount of approximately $120 per month.

4. Defendant, in his answer to the complaint in equity, stated that he had made monthly payments therefrom for the following: $83 on the mortgage held by the Homewood Savings and Loan Association; $56 to the Mellon National Bank and Trust Company (Pitt Office) on a home improvement loan; $27 to Pittsburgh National Bank; $38 to Mellon National Bank and Trust Company upon another home improvement loan; an average of $37 per month for gas heat; an average of $22 per month for electricity and $12.50 toward insurance, a total of $275.50.

5. As a result of these expenses, defendant states that he had to use from $150 to $200 from his own funds to maintain the jointly-owned property.

6. One of the items set forth as an encumbrance on the property, a note to Mellon Bank and Trust Com-

pany, which was entered at October term, 1960, no. 1698, D. S. B. in this court, was incurred by defendant after the date of the divorce and was not signed by plaintiff. In June, 1961, the balance thereof was $2,250.

7. As to the amount owing on the encumbrances against both parties, plaintiff states the balances as follows (July, 1961); Homewood Savings and Loan Association, $3,723.98; Mellon Bank, $675.09, plus $23.40 late charge; Pittsburgh National Bank, $24.79, late charge only, totalling $4,447.26.

8. In respect to these same encumbrances, defendant states the balance owing as follows: Homewood Savings and Loan Association, $3,500; Mellon Bank, $450; Pittsburgh National Bank, $50. To these, he adds 1961 real estate taxes, water assessment and sewage assessment in the amount of $200. His total, therefore, is $6,000.

9. A trustee having been appointed by this court under sections 1 and 2 of the Act of May 10, 1927, P. L. 884, as amended May 17, 1949, P. L. 1394, 68 PS §§501 and 502, the real property was sold on July 31, 1962, after the required advertising of a public sale. It was sold to plaintiff and her present husband, Jack W. Morehead, for the sum of $6,700.

10. After paying out certain items under order of court and under a stipulation between the parties, the trustee had in his hands the sum of $2,133, and filed a report setting forth his distribution of a part thereof and his proposed distribution of the remainder.

## DISCUSSION

Both parties contend that the proposed distribution is against the weight of the law and the evidence; defendant contends that, although in her complaint plaintiff requested the court to divide rental proceeds between the parties, the trustee had no authority to do so. Plaintiff contends that the proposed distribution of proceeds is improper. Both also contend that the dis-

tribution to the Mellon Bank and Trust Company of the balance, which is owing to defendant, is improper.

. The record shows that the court had no hearing in this matter, prior to the sale of the property, to determine its value by testimony of at least two impartial and disinterested witnesses, as required by the Act of 1927, as amended, supra. See also Olsen v. Olsen, 98 Pitts. L. J. 318, in which the rental value was determined prior to the appointment of a trustee. In the order of December 15, 1961, appointing Thomas Harper as trustee to make public sale of the parties' real property, he was directed to determine whether an accounting of past rentals should be had and if so "to make such accounting as is necessary under the facts". The court, in October, 1962, by its order approved the stipulation between the parties as to the items which they agreed should be paid by the trustee. In a separate order in October, 1962, the court also ratified and confirmed the sale of said property to plaintiff and her present husband. In the first of these two orders, the parties were to appear at a time to be set in the future for the purpose of determining the distribution of the balance of the money, if any. In the second of these orders, the trustee was to distribute the balance among the several parties and make report thereof to the court for approval and confirmation. A date for hearing was set thereafter for September 1, 1965. Whether by reason of the seeming conflict between the two orders in October, 1962, or on behest of the parties, the trustee heard the testimony of the parties, and the court hearing was stricken.

In his report, the trustee found that the 1949 amendment to the 1927 Act, supra, is applicable to this proceeding in that (1) the estate by entireties was acquired after the effective date of the said amendment, and (2) an absolute divorce had been granted to plaintiff.

He nevertheless questioned whether plaintiff is entitled to an accounting of rents between the date of the divorce and sale of the property. His question is based upon section 3 of the 1949 Act, which provides that "The proceeds of any sale had under the provisions of this act, after the payment of the expenses thereof, shall be equally divided between the parties. . . ." This question arose under Hunsberger v. Bender, 407 Pa. 185 (1962), which concerned section 3 of the Act of 1925. The court found in that action that "The first sentence of Section 3 does not by its terms set forth explicitly the time at which the interest of the tenants is to be fixed as equal", and that the second sentence of that section of the act ". . . requires an equal division of the sale proceeds *after* the payment of expenses of the sale, clearly indicating that the *time of sale*, not the time of divorce, is the crucial moment for determining the amount of proceeds . . . to be divided equally by the parties".

The Act of 1925 was repealed by the Act of 1927, supra, except where estates by entireties were created between the effective date of the 1925 Act and that of the 1927 Act, and the divorce occurred after the effective date of the 1927 Act: Christner v. Christner, 366 Pa. 41.

Prior to the Act of 1925, there was no procedure by which a divorced tenant by entireties could compel a sale of the entireties property. If the two tenants could not agree on a sale thereof, it remained in existence until one of said tenants died. The 1925 Act was repealed in that the courts held that the act was unconstitutional in respect to estates by entireties which were in existence before the effective date of the act. See Mertz v. Mertz, 139 Pa. Superior Ct. 299, in which a partition of an estate by entireties granted by the lower court was reversed in that the estate had been created in 1921 and could not be stripped or divested

of any of its incidents except by express statutory pro-vision existing at the time of its inception. In that case, the court stated, at page 302:

"It is true that plaintiff and defendant as tenants by entireties became, after the granting of the divorce, for all practical purposes between themselves, tenants in common so far as rents or the rental value of the real estate are concerned . . . And it is not disputed that plaintiff is entitled to sue for and recover her proportionate share of the rental value of the property held by entireties and occupied exclusively by defend-ant 'for the time such real estate shall have been in possession as aforesaid.' Act of June 24, 1895, P. L. 237. Sec. 1, 68 PS §101. Plaintiff's rights as a tenant by the entirety out of possession after a divorce to re-cover from defendant, who has been in exclusive pos-session, her proportionate share of the rental value of the real estate held as tenants by entireties are by virtue only of the Act of 1895, supra, which changed the common law rule that there could be no recov-ery . . . ."

Prior to the acts for partition of entireties property herein discussed, the recovery of rents by a divorced tenant by entireties out of possession required an ac-tion in assumpsit. Prior to divorce an entirety ten-ant out of possession could not claim a share of the rent: O'Malley v. O'Malley, 272 Pa. 528.

Section 3 of the 1927 Act, supra, provided:

"In any case where a husband and wife shall here-after acquire property as tenants by entireties, and shall be divorced, the interest of each of the respective tenants by entireties, subsequent to said divorce, shall be conclusively presumed to be one-half of the value of the property, and to accomplish the provision of this act, the common-law rule relating to entireties is here-by modified. The proceeds of any sale had under the provisions of this act, after the payment of the ex-

penses thereof, shall be equally divided between the tenants by entireties, subject, however, to the deduction therefrom of the amount of any lien entered of record jointly against both of the respective tenants by entireties . . . ."

Prior to the said act, the common-law rule required, in the case of an agreement to sell an estate by entireties, that the proceeds be divided according to the amount each had contributed thereto: Alcorn v. Alcorn, 364 Pa. 375, 379.

Although the courts, even before the Act of 1949, supra, frequently referred to a tenancy in common *as between* the divorced owners of an estate by the entireties (O'Malley v. O'Malley, supra), the important difference between the 1925 Act and the 1927 Act lay in the facts that the legislature provided an equal division of the property between the tenants by entireties *and* set the date of the divorce as the time when the equal division took place. Under the 1927 Act, however, the estate by entireties retained its valuable incident of survivorship unless the partition in equity provided by said act was instituted: Lazare v. Lazare, 365 Pa. 591; Collins v. Wilkinson, 366 Pa. 108.

The 1949 amendment to the 1927 Act, 68 PS §501, provides:

"Whenever any husband and wife, hereafter acquiring property as tenants by entireties, shall be divorced, they shall thereafter hold such property as tenants in common of equal one-half shares in value and either of them may bring suit in the court of common pleas, sitting in equity, of the county where the property is situate, against the other to have the property sold and the proceeds divided between them".

The important difference between the 1927 and 1949 Acts, supra, lies in the fact that under the latter act, the divorce severs the entireties, in respect to properties bought after its effective date, and eliminates

the incident of survivorship: Collins v. Wilkinson, supra.

We have noted that in Allen v. Allen, 9 D. & C. 2d 221, an accounting was sought in respect to an estate by entireties, and the court, after noting that the action in equity was not based upon the 1927 or 1949 Acts, stated: "Lack of knowledge . . . [as to the date on which the entireties property had been purchased] does not hamper our disposition of this matter, however, for from the language of the O'Malley case . . . and that found in Stimson v. Stimson, 346 Pa. 68, . . . after divorce, the parties are considered tenants in common so far as the rents . . . are concerned. While equity has jurisdiction to entertain suits for the disposition of the property and the proceeds of sale under the Act of 1927, supra, and the 1949 amendment, no provision is made for suits in equity for division of accrued rents on property jointly held by divorced spouses.

"By statute, actions for collection of rents on property held by tenants in common are in assumpsit. The Act of June 24, 1895, P. L. 237, sec. 1, 68 PS §101. . . .

"Pa. R. C. P. 1038 provides the procedure whereby the statute may be implemented. . . .

"The Act of 1927, supra, and the 1949 amendment, supra, limit the court of equity to suits for the disposition of jointly-held property of divorced parties. The statute must be construed strictly, and we cannot read something into it that does not appear. Using a strict construction, we find no jurisdiction in equity for an action for the collection of rents between tenants in common. On the other hand, it is abundantly clear that plaintiff has an adequate remedy at law . . ."

The said suit in equity clearly must be distinguished from the one before us, in that only an accounting as to rents was therein sought. In the present instance, an accounting *and* the sale of the property are sought.

Referring back to Hunsberger v. Bender, supra, an accounting as to rents as well as a sale of the estate by entireties, was therein sought under the 1925 Act, supra. The accounting in that case was refused specifically for the reason that under the 1925 Act, the equal division between the parties in the estate by entireties took place upon the date of the *sale* of the property, not upon the date of the divorce, as in the 1927 and 1949 Acts. If the legislature had not intended that an accounting could be had when connected with the sale of the property under those acts, it would have reiterated the language in the 1925 Act, setting the date of sale as the time for equally dividing the value of said property between the parties.

We agree with the trustee that since the rental value of this property was not determined as required by the 1949 Act, any division of rents must be based upon the rents actually received from the property. We also agree with the trustee that the inclusion in this accounting between the parties of rents prior to the date of divorce is questionable. In Rehm v. Rehm, 32 D. & C. 193, 200, the court, citing O'Malley v. O'Malley, supra, stated:

"The law, however, presumes that during the continuance of the marriage relation the moneys received were expended for the benefit of both . . . After the separation, Mrs. Rehm was entitled to support from her husband up to the date of the divorce, and she received none. Whether or not she is entitled to claim credit for a reasonable sum in this account can be determined after the accounting is filed. If expenditures exceeded receipts during said period, as the testimony of Mrs. Rehm would indicate, this question may be of no importance".

We also agree with the trustee that, in paying taxes on the property in full, defendant, under Pennsylvania law, was a mere volunteer and not entitled to recover

from plaintiff her share therein: Mascaro Estate, 28 D. & C. 2d 391.

Although it is clear that as of March 23, 1959, the date of the divorce decree, plaintiff's rights under the 1949 Act to her share of the rents is absolute, it is equally clear that plaintiff's share therein was subject to the deduction therefrom of her share of the expenses.

Between the date of divorce and the sale of the property on July 31, 1962, defendant received $120 per month for 39 months, a total of $4,680. Plaintiff's gross share therein was $2,340.

She was a joint debtor as to the Homewood Savings and Loan Association, the Pittsburgh National Bank, one Mellon Bank loan and the cost of insurance for the jointly owned property. Her share in the monthly payments made thereon by the defendant were:

| | | |
|---|---|---|
| Homewood Savings and Loan Association | $41.50 per month — | $1,618.50 |
| Pittsburgh National Bank | 13.50 per month — | 526.50 |
| Mellon National Bank | 19.00 per month — | 751.00 |
| Insurance | 6.25 per month — | 243.75 |
| | $80.25 | $3,129.75 |

In addition, since rents from the apartments helped pay expenses, it is our opinion that plaintiff should pay one half of the amount of the gas and electric bills. Her share thereof amounts to $1,090.50.

The total to be deducted from plaintiff's share of rents, for the payment of necessary expenses, is, therefore, $4,280.25.

The trustee, in his statement of the debts against both parties, included the Mellon Bank loan signed by defendant after the divorce and without plaintiff's knowledge and consent. This was error. In view of defendant's possession and occupancy of the jointly-owned property and his nonpayment of rent as such, it is our opinion that defendant alone benefited from

the improvements for which he undertook this second loan for home improvements. Thus, the trustee's summation of the amounts spent to preserve the property should be $4,067.60, rather than $6,096.90. Upon this basis, we find that plaintiff owes to defendant, for her share in expenses from March 23, 1959, to July 31, 1962, the sum of $212.65.

The trustee's report also shows that the $2,133 in his hands after payment of the liens of record and the amounts distributed under the stipulation have further been reduced by the sum of $1,121.35. Of this amount, $151.76 was paid to the Mellon National Bank and Trust Company upon defendant's indebtedness incurred after the divorce and without plaintiff's consent. Plaintiff's indebtedness to the defendant is accordingly reduced to $60.89.

The balance presently in the trustee's hands for distribution is $1,011.78. His recommended distribution thereof is as follows:

Thomas A. Harper, additional trustee's fee—$350.

Martha Morehead—$330.89 less one-half of record costs.

McKinley Overton—$330.89 less one-half of record costs, said amount being paid over to Mellon National Bank and Trust Company as judgment creditor of said McKinley Overton.

Under the aforementioned stipulation between the parties, the following distribution, inter alia, was made by the trustee:

(a) the record costs, including the trustee's fee ............................... $335

(b) plaintiff's attorneys' fees ............ $325

(c) defendant's attorney at that time..... $150

(d) the Trustee's Surety Bond ........... $ 96

Defendant has taken exception to the proposed additional fees, in the amount of $350, for the trustee. After the payment to him under the terms of the stipu-

lation, the trustee scheduled hearing dates five times; defendant cancelled the first three dates; only plaintiff and her counsel appeared on the fourth scheduled date, and both parties and their counsel appeared on the fifth scheduled date. Under these circumstances, and in view of his work in respect to payments of expenses, making an accounting and writing his report, this exception clearly has no merit.

Both parties except to the distribution proposed by the trustee in respect to the balance of proceeds due to the parties. The trustee, in failing to find plaintiff's share of expenses, proposed distribution to plaintiff of an equal share of the proceeds from the jointly owned property in the amount of $330.89, less one half of such record costs as are still outstanding. This amount should be reduced by $60.89.

Both parties except to the trustee's proposal that defendant's share of the proceeds be paid to the Mellon Bank and Trust Company upon the loan undertaken by him alone. The said exception overlooks the fact that sec. 3 of the 1949 Act, supra, 68 PS §503 provides:

"The proceeds of any sale had under the provisions of this act, after the payment of the expenses thereof, shall be equally divided between the parties, subject, however, to the deduction therefrom . . . [of] the amount of any liens entered of record against either of such parties. . . ."

The said exception to the proposed distribution is accordingly dismissed. Plaintiff's exception in respect to fees for her counsel is also without merit, the retainer being a matter of private agreement between them.

## DECREE IN EQUITY

And now, to wit, December 6, 1965, it is ordered, adjudged and decreed: (1) that the payments by the trustee of: $32.40 to Ronald Coleman, court reporter;

$110.10 to Bugnone and Swope, court reporters; $96 to Peerless Bond Company, trustee's bond; and $731.-09, water taxes from 1955 to 1962, sewer assessments and 1961 real estate taxes, are hereby confirmed; and (2) that from the balance presently in trustee's hands, he shall make distribution as follows:

(1) To Thomas A. Harper — $350 in additional trustee's fees,

(2) To Martha Morehead — $270, minus one half of such record costs as are still outstanding; and

(3) To Mellon National Bank and Trust Company on behalf of McKinley Overton — $391.78, minus one half of such record costs as are presently outstanding.