# Whitehead *v.* Jones.

*Tenants in common.—Purchase of outstanding title.*

On a bill by the holder of an adverse title against A, B and C, and D their grantee as tenants in common, the court held the title of A, B and C as invalid and their deed to D void, as between themselves as well as against the adverse claimant, but decreed certain payments to be made by A, B and C to D on account of his purchase money. Pending this litigation A, B and C acquired an outstanding title which the court held good, but did not admit D to share. The parties, however, by their conduct for eight years ignored the decree in this respect and treated D as a co-tenant. On a bill then filed by D for a conveyance of his proportionate interest in the after-acquired title, held, that the others were estopped from setting up the decree as a defense.

It was competent for the parties to set aside the decree of the court as between themselves, and their conduct amounted to an agreement to do so. It was not required to be in writing, and the statute of frauds has no applicability. Title did not pass to D by virtue of such agreement; but the decree being out of the way title passed under the rule that an outstanding title acquired by a tenant in common inures to the benefit of all his co-tenants.

Argued Oct. 9, 1900. Appeal, No. 85, Oct. T., 1900, by plaintiff, from decree of C. P. Westmoreland Co., No. 340, on bill in equity in case of Peter Whitehead v. H. D. Jones, Michael Seanor and J. B. Eisaman. Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Bill in equity for a conveyance of land.

DOTY, P. J., filed the following findings of fact and conclusions of law:

### FINDINGS OF FACT.

1. That on or about December 21, 1878, the above named defendants purchased together, the undivided one fourth of a tract of land in Tucker county, West Virginia, containing 27,188½ acres, more or less, known as "Black Water Manor," for which a deed was duly executed and delivered to them, recorded in deed book No. 4, page 231, in the recorder's office of Tucker county aforesaid; and the said defendants, on March 31, 1879, by quitclaim deed duly executed and conveyed to Peter Whitehead, plaintiff, the undivided one sixteenth of said tract of land, which deed is recorded in deed book No. 4, page 334, in the recorder's office aforesaid, for which said plaintiff paid said defendants the sum of $1,030.

2. That thereafter, the plaintiff paid one sixteenth of all the taxes assessed against said property, and one fourth of all moneys paid by the above named defendants for surveying and other expenses charged against said property, down to the year 1891, which said several payments were made in pursuance of the conveyance so as aforesaid made to him, and as owner of the undivided one sixteenth of said real estate.

3. That in or about the year 1883, a proceeding in equity was begun in the circuit court of Tucker county aforesaid by David Gilchrist and others v. Peter Whitehead, H. D. Jones, J. B. Eisaman and Michael Seanor, above named parties and others to test the validity of the title so as aforesaid held by said defendants, which said cause was so proceeded in that, on or about November 24, 1890, the said court filed its opinion and decree, inter alia, as follows:

"The court finds, adjudges, orders and decrees that the defendants, Charles Beswick owns in fee simple the undivided one tenth; Hezekiah D. Jones, Jacob B. Eisaman and Michael Seanor own in fee simple the undivided two tenths . . . . in the undivided one half of the 25,475 acre and 768½ acre tracts of land in the plaintiff's bill and proceedings mentioned; being the net amount remaining after deducting the 420 and 425 acre lots sold to Henry G. Davis and others as stated in said

bill." Which said undivided two tenths of the undivided one half of said real estate was made up of one tenth thereof, which had been conveyed by J. N. Loughrey and wife to the said John F. Gilchrist by deed dated January 13, 1876, and the other undivided one tenth thereof conveyed by David Gilchrist and wife to the said John F. Gilchrist by deed dated January 13, 1876; the consideration for said undivided two tenths being the payment of money and incumbrances owing by said John F. Gilchrist, J. N. Loughrey and David Gilchrist and charged upon said real estate, both prior and subsequent to the delivery of deeds to the above named John F. Gilchrist as aforesaid.

4. That no money was paid to John F. Gilchrist by the above named defendants and the plaintiff, either when said decree was made, or when the deed of John F. Gilchrist, dated December 28, 1889, was made to Eisaman, Jones and Seanor.

5. By the said decree, it was, inter alia, adjudged that the complainants in said bill should pay the defendants, Beswick, Jones, Eisaman and Seanor, the sum of $6,563.13, and of said sum "David Gilchrist shall pay the sum of $937.59;" one half of which was payable to Charles Beswick, and the other one half to Jones, Eisaman and Seanor; which said sum consisted of moneys and incumbrances owing by David Gilchrist on his undivided two-fortieths interest in said real estate and charged upon the said real estate, and which was paid by the above named three defendants and Peter Whitehead, plaintiff, in equal fourth parts. That David Gilchrist did not pay Jones, Eisaman and Seanor the one half of said sum of $937.59, but in payment and satisfaction thereof, executed and delivered his deed, dated February 14, 1891, to said Jones, Eisaman and Seanor for the undivided one fortieth of all said real estate; and the said David Gilchrist failing to pay Charles Beswick his one half of said $937.59, said Jones, Eisaman, Seanor and Whitehead loaned said David Gilchrist sufficient to pay said Charles Beswick, and took a mortgage from David Gilchrist to said Jones, Eisaman and Seanor on his remaining undivided one-fortieth interest to secure the payment of said loan, which said mortgage was prosecuted to judgment, and upon a writ issued thereon, the said undivided one fortieth still remaining in David Gilchrist, was sold thereafter, and from the moneys

arising therefrom the amount owing on said mortgage was paid to said mortgagees.

6. H. D. Jones, with his attorney, was present in the circuit court of Tucker county on or about November 24, 1890, when the opinion and decree of said court was read and handed down, and said Jones heard the said decree read, which, inter alia, contained the following paragraph:

"It is further adjudged, ordered and decreed that the deed of Jones, Eisaman and Seanor to Peter Whitehead, dated March 31, 1879, set forth in exhibit 'No. 5' with plaintiff's bill, is hereby declared null and void and set aside, reserving any equities and rights to the grantee against the grantors on account of the purchase money paid on said deed."

That said Jones brought home with him a copy of said opinion and decree, and immediately informed his codefendants, Eisaman and Seanor of its contents.

7. That after November 24, 1890, being the date when said decree was made, Jones, Eisaman and Seanor failed to treat their conveyance to Peter Whitehead, plaintiff, as null and void in pursuance with the terms of said decree, and also failed to settle with and account to the plaintiff for the purchase money paid by plaintiff for the said undivided one-sixteenth interest in said land. The defendants, in lieu thereof (H. D. Jones, one of their number having had active charge of said litigation), elected and continued thereafter and down to December 19, 1898, to treat the plaintiff as the owner of an undivided interest with them in said property, which said interest was based upon and evidenced by their deed to plaintiff of March 21, 1879, for the undivided one-sixteenth interest in said property. And said defendants, after the date of said decree, continued to make demand from Peter Whitehead, plaintiff, for his share of all taxes and expenses charged against said real estate and owing by him. And the said plaintiff, complying with said demand, and in pursuance with his ownership of an undivided interest in said real estate, continued to pay all moneys and expenses charged against him by said defendants down to and including December 19, 1898, the day on which he was notified that the defendants intended to thereafter count him out of all interest in this property; on which said date, after receiving said notice from Michael Seanor, one of said defendants, plaintiff paid the

said Seanor $13.14, plaintiff's share of expense in surveying the Virginia lands in 1898.

8. As evidence of defendants' further recognition of the ownership of an interest in said property by plaintiff, the defendants had plaintiff join with them in conveyances to A. Thompson for the sale of portions of said real estate subsequent to the date of said decree, and on February 22, 1898, they also executed a paper to said A. Thompson stating that they, with the plaintiff, were owners of one eighth of the Virginia land and that they claimed one eighth of the $20,000 payment about then due, which said one eighth should be divided among them and the plaintiff, in four equal shares, giving to each one $625.

9. That on or about December 19, 1898, the defendants first notified the plaintiff that they were going to try to count him out of all interest in the said West Virginia property, for the reason that the circuit court of Tucker county had embodied in its decree of November 24, 1890, that their deed to plaintiff was null and void, and that plaintiff was not named in the deeds to defendants from John F. Gilchrist and David Gilchrist.

10. That Peter Whitehead, plaintiff, was made a defendant in the bill of equity filed in Tucker county in 1883, as grantee of the undivided one sixteenth of the land in dispute, by deed of the above named defendants, dated March 31, 1879 ; that Jones, Eisaman and Seanor, above named defendants, assumed the active management of the defense in the interest of Peter Whitehead and themselves ; that they, or one of them, was in personal charge of their, and the plaintiff's interest during the prosecution of that case; that H. D. Jones, one of the defendants, was in court in West Virginia when the final decree was read and handed down ; that he brought a copy of this decree home with him, advised his codefendants, Seanor and Eisaman of its contents ; that defendants, as owners, under said decree, of four fortieths of said land, and as grantees from David Gilchrist of one fortieth thereof, in all five fortieths, thereupon and thereafter treated Peter Whitehead as the owner of the undivided one fourth of said five fortieths instead of paying him the purchase money and expenses adjudged to him under said decree, and Peter Whitehead, plaintiff, acquiesced in the ownership of the undivided one fourth of said five fortieths and controlled that interest, paid the taxes, surveying and other ex-

penses on it, and sold that extent of interest in the real estate at different times, and so continued, with the full knowledge, acquiescence and confirmation by defendants of such ownership down to December, 1898.

### CONCLUSIONS OF LAW.

1. That the decree of the circuit court of West Virginia, which had jurisdiction of the subject-matter and the parties, is conclusive, and neither party here can assert any right contrary to such decree.

2. As, inter alia, such decree adjudged the deed on which plaintiff now relies null and void, the plaintiff is thereby concluded.

3. That defendants are not estopped from setting up such decree in answer to plaintiff's bill for specific performance.

4. That the bill be dismissed and the costs divided.

*Error assigned* was decree dismissing bill.

*Paul H. Gaither*, with him *Cyrus E. Woods*, for appellants.— The decree of the circuit court of Tucker county, West Virginia, at the March rules, 1884, was notice, not only to the parties to the present proceeding, they all being parties thereto, but notice to the world. Knowledge of that decree is a conclusive presumption of law, and the parties themselves and all parties claiming by, through or under the parties to that proceeding, are estopped from alleging matters inconsistent with, or contrary to that decree: Greenleaf on Evidence, sec. 538; Hill v. Oliphant, 41 Pa. 364; Diamond v. Lawrence Co., 37 Pa. 356; Third Reform. Dutch Church's App., 88 Pa. 503.

The decree of the circuit court of Tucker county, West Virginia, imposed upon the defendants in this proceeding an obligation which was in the nature of an equitable election: Carr v. Wallace, 7 Watts, 394; Share v. Anderson, 7 S. & R. 43; Critchlow v. Critchlow, 11 Atl. Repr. 235.

The defendants in this proceeding elected to have Whitehead keep the land which, at that time, under the testimony, was considered by them as practically valueless: Com. v. Moltz, 10 Pa. 530; Lloyd v. Carter, 17 Pa. 216; Peebles v. Reading, 8 S. & R. 484; Lynch v. Cox, 23 Pa. 265; Twin-Lick Oil Co.

v. Marbury, 91 U. S. 587; Johnston v. Standard Mining Co., 148 U. S. 370; Clarke v. Hart, 6 H. of L. Cas. 633; Bush v. Sherman, 80 Ill. 175; Tanney v. Tanney, 159 Pa. 282.

*John F. Wentling*, with him *David A. Miller, D. S. Atkinson* and *J. M. Peoples*, for appellee.—A full knowledge of all material facts and circumstances attending the transaction is necessary to give validity to the ratification; the party must know that he would not be bound without such ratification: Thompson's App., 126 Pa. 371; Perry on Trusts, sec. 133.

It has been many times held that long delay, and sometimes a delay of even more than six years, will be regarded as laches sufficient to stay the intervention of equity: Penna. R. Co.'s App., 125 Pa. 203; Sample v. Horlacher, 177 Pa. 247.

There was no estoppel: McCoy v. McCoy, 29 W. Va. 794; Corrothers v. Sargent, 20 W. Va. 351; Mason v. Harpers Ferry Bridge Co., 20 W. Va. 223.

OPINION BY MR. JUSTICE MITCHELL, January 7, 1901

The plaintiff and the three defendants held what we may for convenience call the Baltimore title, in equal fourths as tenants in common, when suit was brought against them in West Virginia. During the pendency of that suit the three defendants received a deed from J. F. Gilchrist for his interest in the land, and within three months after the decree a deed from David Gilchrist for his interest. The West Virginia court held the Baltimore title to be worthless, but sustained the Gilchrist titles, and by virtue of them decreed the defendants to be the owners of two undivided tenths of one half the tract of land in controversy. The subsequent conveyance by David Gilchrist increased defendants' interest to five fortieths or one eighth of the whole tract.

If the decree had stopped here, the Gilchrist titles acquired by defendants, as rightly said by the learned judge below, would have inured to the benefit of the plaintiff as tenant in common with them: Tanney v. Tanney, 159 Pa. 277. But the decree did not stop here. The court not only held that the Baltimore title was bad, but further that the deed from defendants to plaintiff for his one-fourth interest in that title was null and void and was set aside, reserving however the equities and

rights of the grantee (plaintiff) against the grantors on account of the purchase money. Why the court held the deed void while preserving plaintiff's rights in the purchase money, even if the title it conveyed was not good against the hostile claimants in the suit, is not apparent, nor is it necessary now to inquire into the reasons. The court assumed to settle the rights of the parties not only as between the plaintiffs and defendants but also among the defendants themselves, and the decree being unappealed from became conclusive upon all unless by reason of subsequent acts and conduct of the parties.

The decree was made in November, 1890, and was known in fact as well as in law to all the parties at that time. Yet for more than eight years, until December, 1898, all the present parties acted in entire disregard of it. The learned judge finds that " in point of fact the decree so far as it affected the rights of the parties to this bill, was ignored. The plaintiff made no effort to secure the money that was awarded him ; the defendants did not pay any part of the sum decreed to plaintiff. There was no change in the relations of the parties from the time of the decree on November 24, 1890, until the fall of 1898. The plaintiff contributed during this time his proportionate share of all moneys necessary to pay costs, taxes and expenses incident to the ownership of the land ; he joined with defendants in making sundry conveyances and received an equal share of the purchase money. For a period of twenty years before as well as after the decree, he was treated in all respects as an equal joint owner."

But though strongly impressed with the equity of plaintiff's claim and the fraudulent conduct of the defendants, the judge felt constrained to deny the relief sought, on the ground that the acts of the parties were done in mutual ignorance of the effect of the decree, and that an estoppel cannot arise out of a mutual mistake of law. " It is not shown that plaintiff was induced to do anything on the faith of representations made by the defendants. All that was done was voluntary on the part of plaintiff, and when he was in possession of every fact known to defendants. It is alleged that plaintiff was prejudiced by paying his share of taxes and other expenses connected with the ownership of the land. The fact that plaintiff did pay his share of such expenses for eight years after the decree would

have great weight if it were not also in evidence that, during
that time he received out of the land about five dollars for every
one he was called on to contribute. From a money point of
view he was not injured, but greatly benefited because all par-
ties ignored the decree instead of enforcing their rights under
it." In this view we are unable to concur. There was not
only a failure to pay him the money due him under the decree,
but he was called upon from time to time to advance and pay
money for the common benefit in the belief that he was a com-
mon owner, payments for which on defendant's present theory
he was not in any way liable. That in itself was conduct to
his prejudice and the legal effect is not changed by the fact that
he subsequently received all and more in return from the prop-
erty. It is no answer to a man whose rights have been vio-
lated to tell him that the violation has been profitable to him
as well as to the others. And over and above all, who is to say
that he would have acquiesced in the decision of the West Vir-
ginia circuit court without appeal, had he not been led to sup-
pose that so far as it was prejudicial to him, it was not to be en-
forced? We are of opinion that all the substantial elements
of estoppel are here.

But there is another view of the case which leads to the same
result. These parties were brought into the Virginia suit to-
gether as joint defendants. They had no controversy with
each other, and any adjudication by the court of their rights
inter sese was merely incidental to the relief sought by claim-
ants who were equally adverse to both. An agreement by
these parties to set aside the decree as between themselves
could not have been objected to by the plaintiffs in that suit or
by the court which had adjudicated such rights only on the
general principle that equity having taken jurisdiction of a
case will settle the whole of it. It is admitted that a formal
agreement for this purpose would have been valid and effective
and would sustain this bill. The conduct of the parties was
convincing evidence of an agreement understood and acted
upon by the parties for a period of eight years, and fully equiv-
alent to a formal contract. There is nothing in the case that
requires such contract to be in writing. The statute of frauds
has no applicability, for what the parties did was not to pass
title to land by parol but to set aside so much of the decree of

the court as affected their rights with regard to each other. When that was done the law passed title to the land by virtue of the rule that governs the acquisition of an adverse or outstanding interest by one of tenants in common. When the defendants acquired the Gilchrist titles they did so for the plaintiff as well as for themselves, and they were bound when called upon to make him a deed for the same proportionate part as he had previously held with them in the Baltimore title.

Decree reversed and bill reinstated, with directions to decree a conveyance in accordance with this opinion. All costs to be paid by appellees.